Antulio CARABALLO

v.

LYKES BROS. STEAMSHIP CO.

No. 175 of 1962.

United States District Court
E. D. Pennsylvania.

Dec. 20, 1962.

---

217

Norman Shigon, Philadelphia, Pa., for plaintiff.

Krusen, Evans & Byrne, T. J. Mahoney, Philadelphia, Pa., for defendant.

JOHN W. LORD, Jr., District Judge.

This case is now before the Court on Respondent's motion to vacate and set aside the service of citation and libel. Notice is taken that the correct name of Respondent is Lykes Bros. Steamship Co., Inc., and that it is the same corporation which was defendant in Novitski v. Lykes Steamship Co., 90 F.Supp. 971 (E.D.Pa. 1950, Bard, J.). Respondent is called Lykes hereafter.

The libellant makes claims for injuries sustained on May 8, 1962, aboard a Lykes vessel on which he was employed, on the high seas between Balboa, Panama, and the Island of Guam. The first count claims for maintenance and cure; the second is a claim for damages for negli-

gence; and the third is an unseaworthiness count.

The second paragraph of the libel says:

"Respondent's principal place of business is New Orleans, Louisiana, and employs Chas. Kurz Co., 115 Chestnut Street, Philadelphia, Pennsylvania, as a general agent."

The return on service of the writ, filed July 24, 1962, shows that the citation and libel were served on an unnamed person at the office of Chas. Kurz Co., at the stated Philadelphia address, on July 16, 1962.

The docket shows that on July 23, 1962, present counsel for Lykes filed a paper entitled Entry of Appearance, directed to the Clerk, which said simply "Please enter our Appearance on behalf of the Respondent in the above captioned matter."

The next docket entry is the stipulation of the respective counsel, dated July 24, 1962, approved by a judge of this Court July 25, 1962,

"* * * that Respondent shall have an extension of time to and including August 23, 1962, within which to file an Answer, Motion to Vacate Service or otherwise plead to the Libel herein."

The order of another judge of this Court, dated and filed August 29, 1962, reads:

"* * * Ordered that Respondent shall have an extension of time, nunc pro tunc, to and including September 7, 1962, within which to file an Answer, Motion to Vacate Service, or otherwise plead to the Libel herein."

The foregoing comprise the first five docket entries in the case. The last mentioned, No. 5, is accompanied by Respondent's Motion for Extension of Time, supported by affidavit, and includes the following statements:

"1. The Libel herein, setting forth a seaman's claim for damages and maintenance and cure, was served on July 16, 1962 at the office of a Philadelphia steamship agent who has not acted as agent for the Respondent at any time within the past 12 years.

"2. The claims set forth in the Libel relate to a voyage of the SS. DOCTOR LYKES which did not begin, end or include any visit to a port within this jurisdiction.

"3. Respondent has not had any office or agent and has not done any business in this jurisdiction for more than 12 years.

*  *  *  *  *  *

"5. Anticipating that it might wish to file a Motion to Vacate Service, Respondent authorized counsel to enter an Appearance either preliminary to obtaining a non-specific extension of time or preliminary to filing a Motion to Vacate Service."

The next significant docket entry, No. 7, filed September 7, 1962, is the motion at hand. The motion sets forth the following claims and matters in addition to those already recited herein:

"4. The voyage of the SS. DOCTOR LYKES; during which the claims set forth in the Libel are alleged to have arisen, did not begin, end or include any visit to any port or place within the jurisdiction of the Court.

"5. Petitioner is not registered to carry on business in the Commonwealth of Pennsylvania and is not engaged in the conduct of business in the said Commonwealth.

"6. Petitioner does not, and, during any period of time material hereto, did not maintain an office within the Commonwealth of Pennsylvania or do any business within the said Commonwealth.

"7. In Novitsky v. Lykes SS. Co. * * * 90 F.Supp. 971 (1950), it was held by Bard, J., speaking for this Court, that your Petitioner was not amenable to service in this District. There is far less reason for supporting the within service than existed when the Novitski opinion was written * * *"

This Court finds that the quoted paragraphs of Respondent's motion, paragraphs 4, 5, 6 and 7, are correct statements of the uncontradicted facts. After exchange of interrogatories, discovery apparently culminated in the deposition of William Reitze, taken on behalf of the Libellant on October 26, 1962. That deposition is in the record as Doc. 15, filed November 9. It reveals that deponent testified as assistant treasurer of Charles Kurz Company, the alleged agent of Lykes, at whose offices the purported service was made. He testified that Charles Kurz Company are steamship agents, foreign freight haulers, and custom house brokers. As such, they receive commissions—by custom of the trade—from carriers as well as shippers. During the past five years, some commissions had been received by Kurz from Lykes. Solicitors from Lykes have called upon Kurz casually, about once a year; Kurz has not solicited any goods for shipment on Lykes vessels. He furthermore testified that during the five years in question, Kurz has not received service of process against Lykes; has not been requested by Lykes to institute suit locally; nor to retain a lawyer on its behalf. Kurz has not been requested by Lykes to help collect bills; has not forwarded to Lykes correspondence regarding seamen's claims; nor negotiated for Lykes regarding any seamen's claims— all during the past five years (Dep. 19). Kurz is one of some 12 to 18 firms in the freight forwarding business in the Philadelphia area. Some of the others occasionally forward freight for shipment on Lykes vessels, and likewise receive a commission from Lykes (Dep. 22).

In correspondence concerning Respondent's Exceptions to Libellant's interrogatories, Respondent, on October 2, 1962, answered that there was no business relationship between Lykes and Kurz; that Lykes owns or leases no real estate in Pennsylvania—which was the situation for the five years prior to the attempted service; Lykes has never notified Lloyd's Register that Kurz is Lykes' agent for any purpose; and Lykes has had no vessel within the territorial waters of the Commonwealth of Pennsylvania for the past five years.

Since the foregoing statements, quoted from the deposition, affidavits and answers to interrogatories, have not been contradicted, it is clear that Kurz was not acting as agent for Lykes at the time of the purported service, nor was Lykes doing business in Pennsylvania in any sense which would make it amenable to the attempted service. Since the matter was so decided by Judge Bard, at a time when five Lykes vessels had stopped at Philadelphia between 1947 and 1950, it surely follows that—since no other circumstances have changed—they were not doing business in Pennsylvania in 1962 when no Lykes vessels had called in Philadelphia for the preceding five years. Novitski v. Lykes SS. Co., 90 F.Supp. 971 (E.D.Pa.1950).

The remaining question is whether Lykes has waived immunity from service by having its attorney file an appearance on its behalf. That matter raises a series of questions, of which the following are apparent at the outset:

Has there been a ruling by another member of this Court which establishes the law of the case on this point? Is determination to be governed by Admiralty rules, or under the Federal Rules of Civil Procedure? To what extent does local practice or custom bear on the interpretation to be placed upon the acts and procedures to date? Was Respondent's counsel authorized to waive objections to service of process and thus jurisdiction over its person (or *venue*, as it has been designated by libellant's counsel)? Regardless of the dictates of strict legal analysis, has Respondent manifested any intent to waive objections to jurisdiction over its person?

[2] The question of prior ruling develops out of hearings before the Hon. C. William Kraft, Jr., United States District Judge for the Eastern District of Pennsylvania. The docket (Entry 11) shows his order of September 26, 1962 setting a hearing for October 8th on re-

spondent's exceptions to certain interrogatories propounded by libellant. Pursuant to the request of libellant's counsel, says the next order dated October 3, Judge Kraft continued the aforesaid hearing to October 15, 1962.

Then on October 19, after partial hearing on respondent's exceptions, Judge Kraft ordered that final hearing thereon be continued until further order of Court upon request from either party. On that same day he sent identical letters to counsel for libellant and respondent, saying:

"After concluding the partial hearing today on respondent's exceptions to certain of libellant's interrogatories I had occasion to examine the record file and, in consequence of that examination, suggest that you both give consideration as to whether the appearance entered July 23, 1962 (Document 2) was not a general appearance for the respondent by its proctors and whether, if so, questions of the propriety of service and of discovery touching upon the propriety of service may not now be moot."

This Court takes that letter as a caveat, as did counsel, and accordingly has given close attention to the problem. That question, indeed, is one of the principal points briefed and argued on the present motion. It does not appear, however, that Judge Kraft's letter is to be taken as anything more than a counsel of caution. Had he determined the point, as argued by libellant, it is believed that he would have stated such conclusion in the form of a ruling or order.

If determination is to depend upon the Federal Rules of Civil Procedure, the applicable section is Rule 12(b). It provides that objections such as jurisdiction over the person are to be raised either by motion before pleading, or may simply be stated in the answer with any other defenses. And it adds:

"* * * No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion. * * *"

The effect of that section has been described in many different fashions, but never better than by Judge Maris in Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871, 874 (3rd Cir. 1944):

"* * * It necessarily follows that Rule 12 has abolished for the federal courts the age-old distinction between general and special appearances. A defendant need no longer appear specially to attack the court's jurisdiction over him. * * *"

The controversy which resulted in the opinion last cited came before the courts a number of times. Since the three opinions to which reference will be made all appeared under the same caption, Orange Theatre Corp. v. Rayherstz Amusement Corp., the caption will not be repeated in the following citations: 2 F.R.D. 278 (D.N.J.1941); 130 F.2d 185, 187 (3rd Cir. 1942); 139 F.2d 871 (3rd Cir. 1944) [cert. den. sub. nom. Orange Theatre Corp. v. Brandt, et al., 322 U.S. 740, 64 S.Ct. 1057, 88 L.Ed. 1573 (1944)].

The first of the opinions cited was a ruling of the district court on the motion of certain defendants for dismissal of the complaint on venue grounds. These defendants had entered into stipulations with opposing counsel twice extending the time within which to plead or otherwise move with respect to the complaint. 2 F.R.D. 278 (D.N.J.1941). The district court ordered dismissal, in accordance with defendants' motion, despite plaintiff's contentions that defendants' objections had been waived because their motion attacking venue came late, having been filed more than 20 days after service of summons.

It was from this order that the first appeal was taken. In an opinion by the late Judge Goodrich, that order was reversed. The stipulations in question were held to be purely private, regardless of the fact that they had been filed with the clerk of the district court.

Stipulations made without approval of court, purporting to extend the time for pleading, are ineffective. Thus the defendants were in default and had waived their objections. Accordingly, the order was reversed and the cause remanded. 130 F.2d 187 (3rd Cir. 1942).

The second opinion of the Court of Appeals, by Judge Maris, describes the occurrences between August of 1942 and October of 1943, and passes on the validity of those transactions, in the following words:

> " * * * the district court reinstated the complaint and granted the defendants an extension of time within which to answer or otherwise move with respect to it. The extension was granted under the authority conferred upon the district court by Civil Procedure Rule 6(b) * * * under which the court had ample power, in its discretion, to extend the time for serving a motion or answer." 139 F.2d 871, 872.

The foregoing proposition, quoted from the second and final opinion of the Court of Appeals in the Orange Theatre case, demolishes libellant's argument—from the standpoint of the Federal Rules of Civil Procedure—that even stipulations which had been approved by order of court could not extend the time in which to object or answer.

It is pertinent to note another point in the eventual disposition of the Orange Theatre case. In the district court, the defendants had objected on the ground of improper venue. When the reinstated case reached the Court of Appeals for the last time, however, that court found the real basis of defendants' grievances to have been want of jurisdiction of the court over the persons of the particular defendants. That is to say, these defendants had been trying to preserve objections to venue all along, whereas the correct ground was that the service of process was bad. Defendants in fact were not amenable to service in the place, and through the person, upon whom the ostensible service had been made.

Even that mislabelling or misstating of the grounds for objection did not effect a waiver of the true grounds, said the 1944 opinion. 139 F.2d 871. The court said that the gist of defendants' course of action was that whatever appearance they made was *not voluntary*. That is to say: they had been raising objections to matters *other than the merits*.

Since the defendants' appearance, regardless of its designation or other circumstances, in truth made no attempt to meet the merits, it was "not voluntary." Affirming the district court's action in quashing the service of process on these defendants, the court said that without proper service of process—

> " * * * the district court could acquire the power to adjudicate the controversy only if the parties voluntarily appeared. Consequently the failure of the individual defendants to assert the defense of lack of jurisdiction of their persons could not at any time before their voluntary appearance fairly be treated as a waiver of the defense * * *." Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871, 873 (3rd Cir. 1944).

■ Since the proceedings in the instant case involved no extensions of time not approved by order of court, and since the district courts have discretionary power to grant such extensions, there was no waiver by failure to answer or move within the 20 days required by the rule. Cf. Emerson v. Nat. Cylinder Gas Co., 131 F.Supp. 299 (D.Mass.1955).

On the record, there were no other acts or omissions of respondents which constituted waiver. The entire record, including the discovery procedures, has been examined. At all times respondents have insisted upon the fact that they are not amenable to service in this jurisdiction, and—as stated, this court is convinced that the service of itself was invalid.

How is the result altered by the fact that it is in Admiralty? Not at all, so far as can be seen.

█ We agree that Rule 12(b) of the Federal Rules of Civil Procedure is technically not applicable to proceedings in admiralty. Rule 81(a) (1) Fed.R.Civ. P.; see also Rules promulgated 1939, 307 U.S. 653.

But it has been forcefully said that the liberalizing features of Fed.R.Civ.P. 12(b) may be recognized by analogy in admiralty. Untersinger v. United States, 172 F.2d 298, 301 (2nd Cir. 1949). First it recognized that there was a practice in admiralty by which it is not uncommon to join exceptions with the answer without a resulting waiver of jurisdictional grounds. The Troy Socony, 18 F.2d 629, 631 (E.D.N.Y.1926); The Elisabeth Van Belgie, 248 F. 1006, 1007 (S.D.Fla.1917); The Lindrup, 70 F. 718, 719 (D.Minn. 1895). (All the more, it would seem, an uncharacterized appearance such as that made in the present case would not be an automatic waiver.) The Untersinger opinion continues:

"* * * In Boston Ins. Co. v. City of New York, 2 Cir., 130 F.2d 156, this court stated that although the Federal Rules of Federal [sic.] Procedure have not yet been extended to admiralty, the 'practice in admiralty is concededly extremely plastic and always has been so', citing the Dupont case, [Du Pont De Nemours & Co. v. Vance, 60 U.S. (19 How.) 162, 171–172, 15 L.Ed. 584 (1856)], 'and it is legitimate to treat it as not immune to some of the changes in procedure elsewhere.' Now that the highly technical and somewhat metaphysical rule of waiver has been done away with in civil actions in the federal courts, we think that a similar liberalization should by analogy be recognized in admiralty procedure. We find nothing in the General Admiralty Rules promulgated by the Supreme Court, 28 U.S.C.A., to stand in the way. * * *" Untersinger v. United States, 172 F.2d 298, 300 (2nd Cir. 1949).

To the same effect is a decision of Judge Follmer in 1949. Walsh v. United States, et al., 81 F.Supp. 667 (E.D.Pa. 1949). In that case, the answer, which raised *inter alia* the question of venue, was not filed within the 20 days provided by Rule 6 [now Rule 11] of the Local Admiralty Rules. By the same analogy, it was held that Respondent would not be defaulted, and that there had been no waiver of the objection to venue.

Since Miner v. Atlass, 363 U.S. 641, 80 S.Ct. 1300, 4 L.Ed.2d 1462 (1960) a committee appointed by the United States Supreme Court has been subjecting the General Admiralty Rules to restudy. A number of amendments to existing rules, and several entirely new ones, were added to the General Admiralty Rules by order of the United States Supreme Court dated April 17, 1961; effective July 19, 1961. 368 U.S. 1023. While those changes bring the General Admiralty Rules and the Federal Rules of Civil Procedure closer, none of them affect the precise point at hand.

█ In the admiralty practice it would appear—technically speaking—that appearances are still general or special. "There is no rule on the point; it has been sufficiently settled by the cases and the customary practice," says Knauth in 2 Benedict on Admiralty § 233, p. 49 (6th Ed., 1940). In the next sentence and almost in the same breath, however, he says:

"The Civil Rules [Fed.R.Civ.P.] are to the same effect; lack of jurisdiction of the person must be raised by objection, and is waived if not raised by motion, answer or reply: Rule 12(b) and (h)."

There is an excellent discussion of this seeming contradiction in Tsangarakis v. Panama Steamship Company, 185 F. Supp. 502 (E.D.Pa.1960, Kraft, J.). Libellant claimed as surviving spouse and administratrix of a seaman who was killed while serving on respondent's vessel at sea. Certain respondents filed motions to set aside service, as having been made on an unauthorized person. Before hearing on the motion, respondents filed exceptions to the libel together with ex-

ceptive allegations. With exhaustive discussion of the authorities it was held that respondents' filing of exceptions and exceptive allegations constituted a general appearance and cured all defects of service. Only because those exceptions and exceptive allegations went to the merits, however, was that result reached. 185 F.Supp. 504.

It is a truism that admiralty practice is not technical in the sense that niceties of choice of words control substance. "The rules of pleading in the admiralty are exceedingly simple and free from technical requirements." Du-Pont De Nemours & Co. v. Vance, 60 U.S. [19 How.] 162, 171–172, 15 L.Ed. 584 (1856). The Tsangarakis case last cited and quoted (185 F.Supp. 502) in essence held that a purported limited appearance waived preliminary or personal objections if in fact it went to the merits. By the same line of reasoning, it seems clear that Respondent here, however and whatever the paper or papers it filed were entitled, in essence objected to jurisdiction of the Respondent's person *in limine* and never abandoned that position.

None of Respondent's interrogatories or answers to interrogatories were inconsistent with any attendance or participation in the proceedings other than the shadowy and tentative appearance at the threshold which the common law calls Special.

Looking at the matter somewhat subjectively, in order to make sure that no other interpretation is possible, there are these matters to be considered. Respondent's counsel represented the same entity, Lykes Bros. Steamship Co., Inc. in Novitski v. Lykes Steamship Co., 90 F.Supp. 971 (E.D.Pa.1950). He was then successful in convincing the court that Lykes was not doing business in Pennsylvania, although—as pointed out—its ships had called at Philadelphia five times in the last three years. Certainly he had in mind, at all times since he was brought into the case, that the same defense would be unanswerable in 1962 when no Lykes ships had entered Pennsylvania waters in the preceding five years. He stated at the outset, and never wavered, that he was authorized to act for Lykes for the sole purposes of preventing a default judgment and for filing a motion to vacate service. Nor is there anything in the record to indicate that Respondent's counsel in fact possessed any greater authority. The unlikely possibility that the same counsel would in these circumstances undertake to exceed his authority has not even been suggested.

Accordingly, the motion of the Respondent, Lykes Bros. Steamship Co. [Inc.] to vacate the service of citation and libel is hereby granted.

And it is so ordered.