William Clyde **BURTON**, Plaintiff,

v.

Frank T. **PEARTREE** et al., Defendants.

Civ. A. No. 70-3010.

United States District Court,
E. D. Pennsylvania.

May 5, 1971.

William Clyde Burton, pro se.

Warren D. Mulloy, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

## OPINION

HUYETT, District Judge.

William Clyde Burton, by complaint filed October 30, 1970, commenced this civil rights action against forty-four named defendants. The defendants include the Justices and clerks of the United States Supreme Court, the Judges and clerks of the Court of Claims, fourteen employees and officials of the Post Office Department, four members of the Civil Service Commission ("CSC"), and six employees and officials of the Justice Department. Burton alleges that the defendants have conspired with each other, the United States, and possibly other persons, to deprive him of his rights. He seeks back pay from the date his employment with the Post Office Department was terminated, a new position higher than the one he originally held, damages in excess of $20,000,000 ($500,-000 from each defendant), and "proper" correction of the Supreme Court's "official reports containing plaintiff's said case * * * (i. e., Volume 394 U.S.- Part 3, Official Reports of the Supreme Court, April 21 through May 12, 1969, p. 1002." (Complaint, p. 8).

Defendants, represented by the United States Attorney, have moved to dismiss Burton's complaint averring:

1. The Court lacks jurisdiction over the subject matter;
2. The Court lacks jurisdiction over the persons named as defendants;
3. The complaint fails to state a claim upon which relief can be granted;
4. The complaint is frivolous; and
5. Service of process is insufficient.

The motion of defendants is granted.

### I.

Burton, a Negro, was employed until 1966 as an Engineer, SP 9–175, Level 15, with the Engineering Branch, Engi-

neering and Facilities Division, Regional Office, Post Office Department, Philadelphia, Pennsylvania. In early 1966, the position of Chief Engineer became vacant and Burton applied for a promotion to it believing he was entitled to the position by virtue of his position at that time. Also, a dispute arose concerning the exact scope of Burton's duties in the position he was then holding. Burton later made written complaints alleging that as a result of racial discrimination he was not permitted to function at the 15 Level as his job description required; he was not appointed Chief Engineer; and another person less qualified had been placed in the position of Chief Engineer.

During the course of his dispute with the Post Office Department, Burton enlisted the aid of the NAACP and CORE. Negotiations and picketing failed to achieve the result Burton desired, however. Burton also corresponded with White House personnel and members of Congress. Finally, the Equal Employment Officer of the Post Office Department conducted an investigation but the investigation failed to substantiate Burton's allegations of racial discrimination.

Later in 1966, Burton was reassigned to the position of General Engineer, grade GS–14, with an increase in pay, in the Office of Research and Engineering, Washington, D. C. Burton refused to accept reassignment to Washington averring that his "tenure" as a civil servant entitled him to remain in Philadelphia. Over his objection that the transfer was motivated by racial bias, Burton was formally terminated at Philadelphia and entered on the rolls at Washington. Burton never reported for work in Washington and consequently he was finally discharged by the Post Office Department.

Thereafter, Burton commenced an action in the Court of Claims against the United States seeking back pay. Burton alleged that racial discrimination prevented him from being promoted to Chief Engineer and eventually resulted in his transfer. Burton also argued that the Post Office Department could not transfer him without his consent which was never given.

In a four-to-three decision, the Court of Claims granted summary judgment in favor of the United States in Burton v. United States, 404 F.2d 365, 186 Ct.Cl. 172 (1968).[1] The majority accepted the findings of the CSC Board of Appeals and Review as being "lawful, supported by substantial evidence, and not arbitrary or capricious" (404 F.2d at 369). The CSC Board of Appeals and Review had found that failure to promote Burton "was due not to discrimination but to Mr. Burton's behavior on the Philadelphia job, particularly his refusal to perform assigned work. [The termination of Burton's employment] was due not to discrimination but to his refusal to report in Washington as lawfully ordered." The Court went on to say, at 373: "In all this lengthy record there is no evidence that any person or persons concerned with the promotion of plaintiff, his separation from service, and the review by the CSC, acted with a racial bias against plaintiff." The Court also concluded that Burton's consent was not a necessary prerequisite to transfer. It was on the issue of consent that the dissenting Judges disagreed. The dissenting opinion makes no reference to racial discrimination or the lack thereof.

Burton sought review of the Court of Claims decision by writ of certiorari to the Supreme Court pursuant to 28 U.S.C. § 1255. Certiorari was denied. Burton v. United States, 394 U.S. 1002, 89 S.Ct. 1599, 22 L.Ed.2d 780 (1969).

## II.

Unwilling to accept the decision of the Court of Claims and denial of certiorari

1. The opinion of the Court of Claims in Burton v. United States, *supra*, contains a more complete statement of the facts concerning Burton's dispute with the Post Office Department. It also contains a discussion of the administrative remedies pursued by Burton, including review by the CSC Board of Appeals and Review.

by the Supreme Court, Burton has filed a complaint with this Court in an attempt to relitigate his claims against the Post Office Department. Burton has also joined as defendants all persons who refused to grant him the relief he desires or who defended the action on behalf of the United States.

The first six of the twenty-two numbered paragraphs of the complaint do not deal with contentions of Burton which are pertinent to the instant case. Instead, Burton refers to William· Clyde Burton v. Nathan L. Egnal, C.A. #70–946, a previously filed action pending before this Court involving unrelated issues.[2] As part of his complaint in this action (at p. 2) Burton "insists that the District Court *not assign* Judge C. William Kraft, Jr." in Burton v. Egnal averring, *inter alia*, that defendant in that action has no standing in the District Court to defend the action. Clearly, allegations of this nature have no place in Burton's present complaint and further confuse the issues presented therein.

Paragraphs 7 through 13 of the complaint deal with the decision of the Court of Claims. Burton avers that the action filed in the Court of Claims *"has never been decided* under the provisions of [28 U.S.C. § 1491] "[3] and the official report found at 404 F.2d 365 is a "sham-report" which is not authorized under that section. Burton concludes, then, that a determination by the Court of Claims is still pending as the "sham-report" has no effect. Moreover, the "sham-report" filed by the Court of Claims is said to contain "irrefutable and permanently documented proof * * * that the above named defendants from the Court of Claims *conspired* with the United States and 'rigged' its dismissal of plaintiff's petition * * *, which act is contrary to plaintiff's equal rights under the law."

Paragraphs 14 through 17 of the complaint contain allegations that defendants from the Post Office Department violated departmental regulations by removing Burton from his position with the Post Office Department. Burton also avers that defendants from the Post Office Department, CSC, and Justice Department *"conspired* with each other (or someone)" to remove him from his job and refuse him promotion in violation of his rights.

The final portion of Burton's complaint charges that the Justices of the Supreme Court deprived him of his equal rights under the law to have the decision of the Court of Claims reviewed pursuant to 28 U.S.C. § 1255. Finally, Burton avers that the Justices of the Supreme Court conspired with defendant Griswold and unlawfully. permitted Griswold to file ·a "worthless memorandum" rather than a "compulsory brief" in opposition to Burton's petition for a writ of certiorari.

■ Burton, proceeding *pro se*, has filed a lengthy and rambling complaint which contains little more than demands, charges, and conclusions. The complaint is not a short and plain statement of the case and flagrantly violates Fed.R.Civ.P.

---

2. Burton v. Egnal, *supra*, is an action commenced by Burton seeking unemployment compensation subsequent to his discharge by the Post Office Department. Although the discharge made it necessary for Burton to seek unemployment compensation, the legal issues involved in that action do not concern the validity of his discharge or racial discrimination on the part of Post Office personnel.

3. 28 U.S.C. § 1491 provides in part as follows: "The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. For purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States."

8. On this ground alone the complaint may be dismissed. Koll v. Wayzata State Bank, 397 F.2d 124 (8 Cir. 1968), United States ex rel. Holland v. Maroney, 299 F.Supp. 262 (W.D.Pa.1969).

## III.

Since filing his complaint, Burton has submitted numerous motions, requests, and demands to the Court. Although several of these have been in the form of letters and telegrams, and Burton has consistently failed to comply with Local Rule 36,[4] several of the motions require discussion at this time.

Burton has filed two motions to amend his complaint by joining branches of the Post Office Department as defendants. For reasons stated below, the complaint is dismissed. Consequently, there is no need to pass on these motions.

On December 14, 1970, Burton requested prompt reconsideration of his "Application for Writ of Preliminary Injunction" which was denied by Order of this Court on December 3, 1970. In his request, Burton states that the Court erroneously relied upon the decision of the Court of Claims in Burton v. United States, *supra,* since a decision is still pending and only a "sham-report" has been filed. No additional facts or legal arguments were presented. The original refusal to issue the injunction was correct and, therefore, the request for reconsideration is denied.

Burton has attempted to have default judgments entered pursuant to Fed.R.Civ.P. 55(a) [5] against defendants for failure to plead. Rule 55(e),[6] however, provides that default judgment shall not be entered against officers of the United States until plaintiff establishes his claim before the Court. "Clearly, mere failure on the part of the United States to answer is no ground for entry of judgment * * *. Having filed only his complaint, plaintiff's motion must be denied as premature." Fedor v. Ribicoff, 211 F.Supp. 520 (E.D. Pa.1962). It is clear that Burton has read only that portion of Rule 55 which appears to suit his needs and has ignored the other subsections. The request of Burton for entry of default judgments against defendants, all of whom are government officers, is denied.

Burton has also moved to strike defendants' motion to dismiss averring that it is untimely. Defendants, however, have been granted an enlargement of time pursuant to Fed.R.Civ.P. 6. It is within the discretion of the Court to grant such enlargement. Caraballo v. Lykes Bros. Steamship Co., 212 F.Supp. 216 (E.D.Pa.1962). Consequently, the motion of defendants is not untimely and the motion to strike is denied. Moreover, "[i]t must be borne in mind that the issue of jurisdiction is always open and should be determined *in limine* by a trial court." Underwood v. Maloney, 256 F.2d 334, 340 (3 Cir. 1958).

4. "All contested motions shall be accompanied by a brief or memorandum of law containing a concise statement of the legal contentions and authorities relied upon in support of said motion. A copy of each such motion and memorandum or brief shall be served upon opposing parties together with a notice of the date on which the motion will be filed, at least (5) days prior to the date thus fixed for filing. Any party desiring to oppose the granting of such motion or application shall file with the judge to whom the case is assigned a brief or memorandum in opposition thereto, not later than 10:00 a.m. of the date set for filing of such motion. Oral argument shall be dispensed with unless specifically requested by an interested party. In any case, the Court may decline to hear oral argument, and may dispose of such motion without further hearing or argument."

5. Fed.R.Civ.P. 55(a)—"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter his default."

6. Fed.R.Civ.P. 55(e)—"No judgment by default shall be entered against the United States or an officer or agency thereof unless the claimant establishes his claim or right to relief by evidence satisfactory to the court."

## IV.

Defendants have moved to dismiss Burton's complaint averring, *inter alia,* that this Court lacks jurisdiction over the subject matter, the complaint is frivolous, and the complaint fails to state a claim upon which relief can be granted.

Burton is attempting to bring this civil rights action under 42 U.S.C. § 1981 [7] and states that this Court has jurisdiction pursuant to 28 U.S.C. § 1343 (4). [8]

The Supreme Court, in holding that the allegations of a complaint were insufficient to establish jurisdiction under the anti-trust laws, has said, in Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 105–106, 53 S.Ct. 549, 550, 77 L.Ed. 1062 (1934):

"Whether an objection that a bill or a complaint fails to state a case under a federal statute raises a question of jurisdiction or of merits is to be determined by the application of a well settled rule. If the bill or the complaint sets forth a substantial claim, a case is presented within the federal jurisdiction, however the court, upon consideration, may decide as to the legal sufficiency of the facts alleged to support the claim. But jurisdiction, as distinguished from merits, is wanting where the claim set forth in the pleading is plainly unsubstantial. [Cites omitted.] And the federal question averred may be plainly unsubstantial either because obviously without merit, or 'because its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy.' Hannis Distilling Co. v. Baltimore, 216 U.S. 285, 288, 30 S.Ct. 326, 327, 54 L.Ed. 482 [1910]; * * *."

*See also* United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Springfield Television Inc. v. City of Springfield, Mo., 428 F.2d 1375 (8 Cir. 1970); Port Authority Bondholders Protective Committee v. Port of New York Authority, 387 F.2d 259 (2 Cir. 1967).

■ Although none of the above-cited cases concerned jurisdiction based upon § 1343, the reasoning is applicable. For the Court to assume jurisdiction pursuant to § 1343(4), the plaintiff must assert a claim "under any Act of Congress providing for the protection of civil rights". Where, however, the claim asserted under the Civil Rights Acts is "plainly unsubstantial * * * because obviously without merit", jurisdiction over the subject matter is lacking. Indeed, Judge Masterson of this Court dismissed the complaint in Myers v. Jamie Music Publishing Co., C.A. #43822 (E.D.Pa. March 18, 1971), for lack of jurisdiction over the subject matter when jurisdiction was allegedly based upon § 1343, saying: "These jurisdictional allegations are insufficient to confer jurisdiction on this Court because * * * Plaintiff's allegations of a conspiracy to deprive him of his civil rights are totally unsupported by the facts alleged in his complaint."

■ In Hamilton v. Pelagatti (E.D. Pa. February 25, 1971), I reiterated the policy of the courts to afford liberal construction of a plaintiff's complaint so that the action will not fail en-

7. "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, given evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

8. "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
   (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

tirely merely because plaintiff misconceives the nature of the proceeding or mislabels his petition. In accord with this policy, Burton's complaint has been construed in a manner most favorable to him.[9] Nonetheless, Burton's complaint has been found to be totally devoid of merit. Allegations of denial of equal treatment of law and references to 42 U.S.C. § 1981, unsupported by facts which could possibly provide a basis for relief under the Civil Rights Acts, are insufficient to confer jurisdiction upon this Court pursuant to 28 U.S.C. § 1343. The complaint must be dismissed because this Court lacks jurisdiction over the subject matter.

## V.

Burton's complaint must also be dismissed for failure to state a claim upon which relief can be granted. In addition to failure to allege facts which, if proved, would entitle Burton to relief, all of the defendants are immune from suit under the Civil Rights Acts. 42 U.S.C. § 1981 et seq.

Judicial officers are immune from suit under the Civil Rights Acts for acts undertaken in the performance of their duties. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); see also Bauers v. Heisel, 361 F.2d 581 (3 Cir. 1966) and cases cited therein. Clearly, the Justices and clerks of the Supreme Court, the Judges and clerks of the Court of Claims, members of the Civil Service Commission, and employees of the Justice Department who defended the action on behalf of the United States are immune from suit.

Burton has also joined as defendants officials and employees of the Post Office Department. Federal employees enjoy a more general form of immunity from personal liability from all actions taken within the outer perimeters of their official duties. Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); Keiser v. Hartman, 339 F. 2d 597 (3 Cir. 1964), cert. den. 381 U.S. 934, 85 S.Ct. 1764, 14 L.Ed.2d 699. This immunity also applies when jurisdiction is claimed under the Civil Rights Acts. See Gregoire v. Biddle, 177 F.2d 579 (2 Cir. 1949), cert. den. 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363. In Rosenman v. Levbarg, 435 F.2d 1286 (3 Cir. 1970), the Third Circuit said (at 1287):

> "We recognize the long-standing salutory rule that '[t]he appointment to an official position in the Government, even if it be simply a clerical position, is not a mere ministerial act, but one involving the exercise of judgment", and '[t]herefore it is one of those acts over which the courts have no general supervisory power.' [Cites omitted.]"

See also Adams v. Nagle, 303 U.S. 532, 58 S.Ct. 687, 82 L.Ed. 999 (1938). Moreover, Burton has not averred nor has he alleged facts indicating that the defendants were acting beyond the outer perimeters of their official duties. Consequently, these defendants are also immune from suit.

Burton commenced this action against forty-four named defendants. All of the defendants, however, are immune from suit under the Civil Rights Acts. Consequently, the complaint must be dismissed for failure to state a claim upon which relief can be granted.[10]

## VI.

Burton has had his day in court regarding his discharge from the Post Office Department. He commenced an action before the Court of Claims and judgment was entered against him and in favor of the United States. The deci-

---

9. Liberal construction of complaints has been primarily afforded indigent prisoners proceeding without legal assistance. Although Burton is proceeding *pro se* he is, however, well educated, and, of course, is not a prisoner. Thus, Burton has been afforded every possible benefit of doubt.

10. In view of the foregoing reasons for dismissal and the large number of defendants, the issues of insufficient service of process and lack of jurisdiction over the persons named as defendants which have been raised by the defendants will not be discussed.

sion of the Court of Claims is *res judicata* with regard to those portions of his complaint concerning his discharge. The mere fact that Burton now alleges denial of his rights under the law by members of the Court in addition to his prior allegations is insufficient to justify relitigating those issues decided by the Court of Claims.

For the reasons stated above, the following Order will be entered.

### ORDER

Now, this 5th day of May, 1971, defendants' motion to dismiss the complaint of William Clyde Burton is granted.