Owen W. CRUMPACKER, Plaintiff,

v.

Chet FARRELL et al., Defendants.

No. H 79–0108.

United States District Court,
N. D. of Indiana,
Hammond Division.

April 22, 1981.
Supplemental Opinion April 24, 1981.

Owen Crumpacker, Hammond, Ind., pro se.

Kenneth D. Reed, Harold Abrahamson, Hammond, Ind., Gregory S. Reising, Clorius L. Lay, Hamilton L. Carmouche, Gary, Ind., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:*

This action—as well as three other related cases [1]—has its roots in a contempt of court citation issued against plaintiff Owen W. Crumpacker during the course of his representation of certain defendants in a state court condemnation proceeding. *State of Indiana v. Kushner*, 36721–C (LaPorte Circuit Court, April 29, 1975). The

---

* On August 12, 1980, Owen W. Crumpacker, a defendant herein, and his wife, Eleanor Mary, named as defendants in a civil rights suit the judges of the United States District Court for the Northern District of Indiana. *Crumpacker v. Civiletti*, Hammond Civil No. H 80–451 (N.D. Indiana). As a result, the Honorable Phil M. McNagny, Jr., who originally presided over this action, as well as the other judges in this district, have recused themselves pursuant to 28 U.S.C. § 455 from all litigation involving Owen and Eleanor Crumpacker. On September 16, 1980, the Honorable Thomas E. Fairchild, Chief

Judge for the United States Court of Appeals for the Seventh Circuit, designated this Court pursuant to 28 U.S.C. § 292(b) as a special district court for the Northern District of Indiana for the purpose of presiding over this and other cases involving Owen and Eleanor Crumpacker.

1. *Crumpacker v. Moody*, Hammond Civil No. H 79–161 (N.D.Ind.); *Crumpacker v. Farrell*, Hammond Civil No. H 79–102 (N.D.Ind.); *Crumpacker v. Farrell*, Hammond Civil No. H 79–86 (N.D.Ind.).

Honorable Alban M. Smith, who presided in that action, issued the order of contempt after Crumpacker had failed to comply with an order to return to his clients various files and $70,000 he had retained as payment for attorney's fees. Judge Smith's order provided that Crumpacker would be incarcerated in the LaPorte County Jail until he complied with the Court's order.

After three-and-one-half years of legal machinations, however, Crumpacker still was free of custody and his former clients still had not received their money and papers. Finally, in a habeas corpus proceeding that Crumpacker had filed in 1975 to attack the contempt citation, the Honorable James T. Moody ordered that the April 29 order be enforced. *Crumpacker v. Pruitt*, Cause No. 175–528 (Lake Superior Court, October 20, 1978). And yet Crumpacker still was able to avoid incarceration; on October 26, as the Lake County sheriffs were poised to take him into custody, Crumpacker was stricken down by illness and hospitalized at St. Margaret Hospital in Hammond and then St. Catherine's Hospital in East Chicago until November 15. According to the complaint, a sheriff rode with Crumpacker in the ambulance to St. Margaret; moreover, sheriffs remained posted outside Crumpacker's hospital rooms during his entire period of hospitalization. ¶ 10. Further, he alleges that on November 15, Lake County sheriffs delivered him to the LaPorte County Sheriff's Department for enforcement of the contempt citation.

Crumpacker brings this action pursuant to the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and Indiana state law seeking $1.5 million in compensatory and punitive damages for false arrest and imprisonment, assault and battery, and unlawful entry into his hospital rooms. Named as defendants are various Lake County sheriffs, his former clients in the state condemnation proceeding, and attorneys he claims were acting on their behalf. Plaintiff's theory is that these defendants conspired to extort from him the $70,000 and the papers sought by his former clients by falsely arresting and imprisoning him under a void contempt order.

This action now comes before the Court on motions by several of the defendant attorneys—Abrahamson, Reed, and Reising—to dismiss or for summary judgment and by Crumpacker's former clients—Steve Gersack, Doris Gersack, and Abe Kushner—to dismiss and for a protective order. Although these motions long have been on file, plaintiff has completely failed to respond to them.[2] Accordingly, as it advised it would, the Court will consider these motions without the benefit of plaintiff's views.

█ Defendants Abrahamson, Reed, and Reising argue that the allegations of the complaint either fail to implicate them in any inappropriate conduct or improperly seek to relitigate matters already decided. Upon examination of the complaint and the extrinsic materials filed by these defendants, the Court agrees.[3]

First, many of the allegations either are erroneous or simply innocuous. Paragraph 5 merely identifies these defendants by address and profession. Paragraph 9 alleges that these defendants were not attorneys of

**2.** The motions for summary judgment and dismissal have been on file for more than two years; the motion for a protective order was submitted nearly fourteen months ago. At a status hearing held November 21, 1980, the Court ordered plaintiff to respond to these motions by December 8. On December 18, after it had become obvious that plaintiff would not comply with that deadline, the Court on its own motion issued a new deadline to January 9, 1981. In that order the Court warned that it would grant no additional extensions of time for filing briefs, and after January 9, would consider the motions irrespective of whether plaintiff chose to file briefs. On January 9, 1981, plaintiff moved for an extension of time in which to file responsive briefs; the Court, pursuant to its order of December 18, denied the motion.

**3.** Although defendants denominate their motion as one for dismissal or summary judgment, the proffer of extrinsic evidence in support of the motion requires the Court to consider it as one for summary judgment pursuant to Fed.R. Civ.P. 56(b). *See also* Fed.R.Civ.P. 12(b).

record in the proceeding before Judge Moody; this, however, unquestionably is erroneous. Reed is listed as a party-defendant in the caption of Judge Moody's order of October 20, 1978. Reising represented the Gersacks and Kushner, who successfully intervened in the action on March 10, 1976; both Reising and Abrahamson are listed as attorneys of record on orders filed by the state court.[4] Since Abrahamson was counsel of record in that proceeding, the allegation in paragraph 10 that he delivered copies of Judge Moody's order to the Lake County sheriffs is in itself innocuous.

Second, the heart of plaintiff's complaint, contained in paragraphs 9 and 12, is based on the underlying premise that Judge Moody's order enforcing the April 29, 1975, contempt citation—and perhaps the April 29 order itself—are void. The allegations of a conspiracy to obtain unlawfully the money and papers, of a false arrest, and of a false imprisonment all depend upon the view that the contempt order and the attempts to enforce it, as well as the order requiring Crumpacker to turn over the money and papers, were invalid. These issues, however, have been litigated to death. The following chronology of legal actions stemming from the April 29 contempt citation and the order requiring the return of money and papers bears this out.

Upon issuance of the contempt citation, Crumpacker filed in the Indiana Supreme Court an original action attacking Judge Smith's contempt citation as well as his underlying order. The Supreme Court dismissed the action, commending Crumpacker to the normal appellate process. *State of Indiana ex rel. Crumpacker v. LaPorte Circuit Court*, No. 575 S 137 (December 10,

1975). Crumpacker then filed such an appeal, but it was dismissed due to Crumpacker's failure to file briefs in a timely manner. *Crumpacker v. Kushner*, 3–1275–A–284, 3–1275–A–285 (Ind.Ct.App., May 20, 1976). The Supreme Court on September 9, 1976, declined to hear an appeal of the action.[5]

Contemporaneous with these appeals, Crumpacker filed in state court in a different county a petition for writ of habeas corpus. The Honorable Cordell C. Pinkerton, who then presided over the action, issued a temporary writ and ordered the Sheriff's Office to amend its service to comply with statutory requirements. *Crumpacker v. Pruitt*, Cause No. 175–528 (Lake Superior Court, June 9, 1975). The Sheriff's Office did so.[6] The case was inactive until Judge Moody, who succeeded Judge Pinkerton, vacated this temporary writ by an order dated November 23, 1976. He stayed the order to give Crumpacker an opportunity to appeal. Crumpacker's appeal, however, was dismissed by the Indiana Supreme Court for failure to prosecute. *Crumpacker v. Pruitt*, Cause No. 477 S 251 (October 16, 1978). Upon receiving notice of the dismissal, Judge Moody vacated his stay and ordered the enforcement of Judge Smith's contempt citation. The Supreme Court on November 6, 1978, denied Crumpacker's petition for a temporary writ of prohibition, a denial which it made permanent on March 6, 1979. *State of Indiana ex rel. Crumpacker v. Lake Superior Court*, Ind., 386 N.E.2d 663 (1979). In denying the petition, the Supreme Court expressly found that Judge Moody had acted appropriately in issuing orders to enforce the contempt citation. *Id.* at 665.

---

**4.** *See Crumpacker v. Pruitt*, Cause No. 175–528 (Lake Superior Court, April 5, 1976); *Crumpacker v. Pruitt*, Cause No. 175–528 (Lake Superior Court, October 28, 1976).

**5.** Indeed, the Court observes that the Indiana Supreme Court, in a disciplinary proceeding brought against plaintiff, stated that Crumpacker's clients were entitled to receive their files and money pursuant to Judge Smith's order, *Matter of Crumpacker*, 269 Ind. 630, 383 N.E.2d 36, 47 (1978), *cert. denied*, 444 U.S. 979,

100 S.Ct. 481, 62 L.Ed.2d 406 (1979). Thus, to the Indiana Supreme Court, the propriety of Judge Smith's orders was a closed matter.

**6.** In his complaint, plaintiff suggests that the defect never was cured, and that Judge Pinkerton's June 9 order made the writ permanent. This is contradicted by subsequent orders issued by Judge Pinkerton in that proceeding. *See, e. g., Crumpacker v. Pruitt*, Cause No. 175–528 (Lake Superior Court, June 19, 1975).

Crumpacker, however, was not yet through. He filed another petition for writ of habeas corpus, this time before the Honorable James L. Clement, which was denied. *Crumpacker v. Pruitt*, Misc. Docket No. 590 (Lake Superior Court, November 9, 1978). Crumpacker filed yet another petition for writ of habeas corpus on November 15, 1978, but then dismissed it voluntarily two days later. *Crumpacker v. Arnold*, Cause No. S2–78–4218 (LaPorte Superior Court, November 17, 1978). On the same day he appeared before the Honorable Robert S. Gettinger, who succeeded Judge Smith in the condemnation proceeding, and unsuccessfully moved to be released from custody. Crumpacker moved that the court reconsider its ruling, but then voluntarily dismissed the motion. *State of Indiana v. Kushner*, 37621–C (LaPorte Circuit Court, November 22, 1978). Finally, Crumpacker filed a petition for writ of habeas corpus in the Seventh Circuit, which was remanded to and evidently still is pending in the Northern District of Indiana. *Crumpacker v. Arnold*, Misc. Docket No. 403 (N.D.Ind.).

A number of inferences can be drawn from this tortuous litigation history. But the one that inescapably must be drawn is that plaintiff has attacked each and every ruling adverse to him in every conceivable way possible—and then some. Plaintiff no longer can argue that Judge Smith's order requiring him to return the money and papers to his clients was invalid; that Judge Smith's contempt citation was invalid; or that Judge Moody was without authority to issue the orders to enforce that citation. Those matters have been resolved finally, either on the merits or because of plaintiff's laxity in pursuing the appeals that he filed. With the propriety of these judicial actions established unequivocally, the very foundation of plaintiff's action against these defendants collapses. Accordingly, the Court grants summary judgment in favor of defendants Abrahamson, Reid, and Reising.[7]

The motion to dismiss filed by the Gersacks and Kushner is based solely on a settlement agreement they entered into with plaintiff in *Crumpacker v. Arnold*, Misc. Docket No. 403 (N.D.Ind.).[8] This agreement provided that the parties would arbitrate the right of the defendants herein to the money and records notwithstanding the resolution of that matter in other judicial proceedings, "it being the intent of the parties that there shall be a *de novo* hearing on these issues." Pursuant to the agreement, Crumpacker would dismiss various suits instigated against the Gersacks and Kushner, and they in turn would dismiss their claims against him in the condemnation proceeding. It was agreed that the arbitrator's decision would be final, as the parties "expressly waive their rights to appeal or otherwise further litigate the merits of the submitted controversy." Finally, the parties agreed that Crumpacker would dismiss the habeas action pending in this court upon the decision of the arbitrator.

■ Defendants argue that this agreement, which was intended to settle not only the habeas action but the underlying dispute as to the money and papers as well, precludes Crumpacker's claims against them in this action. The Court has no quarrel with defendants' general proposition that a properly executed settlement is as binding and conclusive of parties' rights and obligations as a judgment on the merits. *See, e. g., Thomas v. State of Louisiana*, 534 F.2d 613, 615 (5th Cir. 1975). For this principle to be operative, however, the settlement agreement must finally resolve a matter in dispute. In this instance, defendants have failed to present sufficient evidence of an actual settlement of the *Arnold* litigation.

■ The agreement entered into by the parties expressly makes dismissal of *Arnold*

---

7. This ruling renders it unnecessary for the Court to express a view as to defendants' assertion that the complaint must be dismissed due to plaintiff's failure to comply with the procedures for filing *pro se* civil rights actions as provided by Rule 6A of the Local Rules for the Northern District of Indiana.

8. Again, because defendants have submitted extrinsic evidence in support of their motion—the settlement agreement—the Court considers the motion as one for summary judgment. *See* Fed.R.Civ.P. 12(b), 56(b).

contingent upon a decision by the arbitrator. In *Warner v. Rossignol*, 513 F.2d 678, 682 (1st Cir. 1975), the court found that an agreement which stipulated that the action would be dismissed only upon some future act by the defendant could not be construed "as an immediate and final substitute for plaintiff's pending action." Because the Court cannot say that the agreement has settled the dispute between the parties and thus extinguished all areas of action arising therefrom, that agreement cannot be invoked to preclude this action.

■ Moreover, construing the motion as one to enforce the settlement agreement, the Court still would be required to deny defendants any relief.[9] Not only have defendants failed to apprise the Court in any way about the progress of the arbitration proceeding, but they also have not indicated that plaintiff in any way has breached the agreement by failing to go forth with its terms. If in fact the arbitration proceeding has stalled due to conduct by the parties, the Court is without the information necessary to determine which party is culpable. A party who breaches a settlement agreement cannot then come before the Court and seek its enforcement. *Warner*, 513 F.2d at 683; *Hall v. People to People Health Foundation, Inc.*, 493 F.2d 311, 313 (2d Cir. 1974). Thus, since the Court cannot say at this time that defendants are not responsible for delays in the arbitration proceeding, it would be inappropriate for the Court to grant defendants enforcement thereof.[10]

■ The final motion before the Court is the motion by the Gersacks and Kushner for a protective order precluding plaintiff from enforcing his request for production dated January 9, 1980. Upon examination of the request for production filed by plaintiff, the Court concludes that the materials sought extend far beyond the legitimate scope of this action. Although the complaint focuses on the events that transpired subsequent to Judge Smith's contempt citation in April, 1975, the information requested by plaintiff largely relates to events occurring in the late 1960's. Accordingly, the Court grants defendants' motion for a protective order, thereby relieving them of the burden of complying with plaintiff's request for production of documents dated January 9, 1980.

To summarize, the Court grants the motion for summary judgment filed by defendants Abrahamson, Reid, and Reising.[11] The motion by the Gersacks and Kushner to dismiss based on the settlement agreement in *Arnold* is denied; their motion for a protective order is granted. It is so ordered.

## SUPPLEMENTAL OPINION

On April 22, 1981, this Court issued a Memorandum Opinion and Order granting a motion for summary judgment by defendants Abrahamson, Reid, and Reising on the grounds that plaintiff was seeking to relitigate matters already decided. In that opinion, the Court denied the motion to dismiss filed by defendants Steve Gersack, Doris Gersack, and Abe Kushner based on a settlement agreement entered in an earlier lawsuit. At the same time, the Court invit-

9. A motion to enforce a settlement agreement is properly directed to the court in which the original action is pending. *See, e. g., Arco Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir. 1976). The *Arnold* action, which was pending before Judge McNagny, has not yet been assigned to this Court. Under the assumption that it eventually will be so assigned, however, the Court in the following discussion assumes *arguendo* that it maintains jurisdiction to enforce the settlement.

10. In light of the Court's decision concerning the defendant-attorneys' motion, however, the Court asks these defendants as well as the

nonmoving defendants to file motions for summary judgment on or before May 4, 1981. Plaintiff is to respond on or before May 11, 1981. At that time, the Court will consider all motions filed, whether or not supporting and opposing memoranda have been filed.

11. Moreover, since the federal claims have been resolved at a very preliminary stage of the proceedings, the Court in its discretion dismisses the pendent state law claims as to these defendants. *United Mine Workers v. Gibbs*, 383 U.S. 715, 716, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

ed these later three defendants to move for summary judgment based on the ruling with respect to the Abrahamson, Reid, and Reising motion. *Crumpacker v. Farrell, supra,* at 281 n.10.

Since that opinion issued, however, the Court on reflection has determined that the instant cause is an appropriate case to exercise its discretion to grant the motion directed to the pleadings, on a ground other than specified therein. *See Robinson v. Mammoth Life & Accident Insurance Co.,* 454 F.2d 698, 699 (7th Cir. 1971), *cert. denied,* 409 U.S. 872, 93 S.Ct. 202, 34 L.Ed.2d 123 (1972), wherein the Seventh Circuit has so authorized. Thus, even though the Gersacks and Kushner did not premise their motion on principles of issue and fact preclusion, the Court may consider those principles in deciding the propriety of terminating this action as to those defendants. Inasmuch as the Court finds that the preclusion of relitigation which required judgment for Abrahamson, Reid, and Reising applies equally to the Gersacks and Kushner, the Court now grants summary judgment in favor of defendants Gersacks and Kushner. Accordingly, these defendants need not file briefs as specified in the April 22 Memorandum Opinion and Order. The Court, however, does ask that the remaining defendants in this action file motions for summary judgment as set forth at 281. *It is so ordered.*