Mary Eleanor N. CRUMPACKER and
Owen W. Crumpacker, Plaintiffs,

v.

Benjamin R. CIVILETTI, as Attorney
General of the United States of
America et al.

No. Hammond No. H 80–451.

United States District Court,
N. D. Indiana,
Hammond Division.

May 6, 1981.

Owen W. Crumpacker, pro se.

Mary Eleanor Crumpacker, pro se.

Charles B. Miller, Asst. U. S. Atty., Hammond, Ind., Fred G. Donnersberger, Wilson, Donnersberger & Reid, Hammond, Ind., Richard E. Timmons, Clerk U. S. District Court, Harold Abrahamson, Kenneth D. Reed, Hammond, Ind., Saul I. Ruman, Hammond, Ind., Theodore L. Sendak, Atty. Gen. of Indiana, c/o Robert S. Spear, Deputy Atty. Gen., Indianapolis, Ind., Robert Berger, Hammond, Ind., Carl N. Carpenter, Patrick J. Galvin, Galvin, Galvin & Leeney, Hammond, Ind., Gregory S. Reising, Reising & Mindel, Gary, Ind., Francis T. Grandys, Crown Point, Ind., Robert A. Lucas, James A. Holcomb, Merrillville, Ind., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge: *

Plaintiffs bring this action against a potpourri of sixty-four defendants, among whom are federal executive officers, federal judges, and United States Attorneys, financial institutions located in Indiana, disaffected family members, and past and present legal adversaries. Plaintiffs contend that these defendants conspired (1) to interfere with Owen Crumpacker's attempts to win election to the United States House of Representatives in 1978 and 1980; (2) to subject Owen to unlawful searches and seizures; (3) to deprive Owen and Mary Eleanor of just compensation for a parcel of land—Tract 02–126—that was condemned pursuant to the creation of Indiana Dunes National Lakeshore; and (4) to convict Owen of "infamous crimes" without due process. Plaintiffs have set forth twelve separate constitutional and statutory provisions under which this action purportedly arises: the Fourth, Fifth, and Sixth Amendments to the United States Constitution; 42 U.S.C. §§ 1981, 1983, 1985, and 1988; and 28 U.S.C. § 1331, 1343, 1441, 2201, and 2410. Plaintiffs seek recovery of $5.5 million in compensatory and punitive damages,[1] and a declaration of their ownership of Tract 02–126.

All sixty-four defendants, in eight separate motions, have moved to dismiss the action for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). In addition, all but two defendants—Ruman and Breskow—alternatively have moved for summary judgment based on res judicata and collateral estoppel. Since Ruman and Breskow have filed motions directed to the pleadings, however, the Court has the authority to grant their motions on any appropriate ground, even if not raised therein. *Robinson v. Mammoth Life & Accident Insurance Co.*, 454 F.2d 698, 699 (7th Cir. 1971), *cert. denied*, 409 U.S. 872, 93 S.Ct. 202, 34 L.Ed.2d 123 (1972). Accordingly, the Court will consider whether res judicata and collateral estoppel bar this action against Ruman and Breskow as well.[2]

---

\* Because plaintiffs named as defendants in this action judges of the United States District Court for the Northern District of Indiana, the Honorable Thomas E. Fairchild, Chief Judge for the United States Court of Appeals for the Seventh Circuit, designated this Court pursuant to 28 U.S.C. § 292(b) as a special district court for the Northern District of Indiana for the purpose of presiding over this and other cases involving Owen and Mary Crumpacker.

1. Plaintiffs seek no monetary relief from the federal executive officials or from the United States Attorneys.

2. Although plaintiffs have failed to respond to each motion filed, they have filed briefs in opposition to several of the motions which raise the issues listed above. Therefore, the Court will consider these briefs as being filed in opposition to all defendants' motions. Plaintiffs have moved that defendant Reising, who represents himself, the Crumpacker defendants, and Kushner, be required to show authority for his representation. Reising responded by filing with the Court letters from these defendants authorizing his representation. Plaintiffs have objected that these letters are inadequate, but the Court finds that contention to be without merit.

The Court has carefully reviewed the complaint, the history of Owen Crumpacker's litigation involving the matters raised herein, and the principles underlying the federal rules of pleading and the doctrines of res judicata and collateral estoppel. This review leads the Court to conclude that the complaint as a whole falls grievously short of compliance with Fed.R.Civ.P. 8, and that each substantive claim either is unsupported by the allegations of the complaint, already is the subject of pending litigation, or conclusively has been resolved by completed litigation. For these reasons, the complaint in its entirety must be dismissed as to all defendants.

## I. *Failure to Comply with Rule 8*

 It is well established that the Federal Rules of Civil Procedure require that a complaint do no more than give notice of the nature of plaintiffs' claims and the grounds upon which they rest. *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957); *Sawmill Products, Inc. v. Cicero*, 477 F.Supp. 636, 641 (N.D.Ill.1979). Rule 8 places only the barest of restrictions on the form that this notice may take. It requires, in relevant part, that the complaint provide a short and plain statement of the claim and the basis for the court's jurisdiction; and that the statement be simple, concise, and direct. Fed.R.Civ.P. 8(a)(1), (2), 8(e)(1). Because of the varying complexity of litigation, the appropriate length and complexity of a pleading will vary from case to case. Thus, it is left to the trial judge in each case to determine whether a particular pleading complies with the Rule 8 mandate for clarity and brevity. *Gillibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir. 1969); 5 Wright & Miller, *Federal Practice & Procedure* § 1217 at 128. The Court is satisfied that the complaint in this action does not by any stretch of the imagination provide a clear and brief statement of plaintiffs' action; to the contrary, it embodies virtually every conceivable element of poor pleading.

First, the complaint, which spans fifty-three legal-sized pages and contains fifty-seven paragraphs, is overly-long. The Court is mindful that plaintiffs' intricate conspiracy theory might warrant more detailed explication than normally is the case in civil rights actions. Nonetheless, plaintiffs' rambling and circuitous style takes this pleading far beyond any reasonable length.[3] *See, e. g., Brown v. Califano*, 75 F.R.D. 497, 499 (D.D.C.1977) (dismissed under Rule 8 a complaint containing "a confused and rambling narrative of charges and conclusions"); *Brainerd v. Potratz*, 421 F.Supp. 836, 839 (N.D.Ill.1976), *aff'd*, 566 F.2d 1177 (7th Cir. 1977) (dismissed under Rule 8 a complaint that was "prolix, argumentative, and replete with legal conclusions"). Further adding to the excessive length of the pleading are the irrelevant and derogatory comments that plaintiffs direct at certain defendants.[4] *See, e. g.,*

Plaintiffs in their briefs also argue that defendants Abrahamson and Reed, who represent themselves and several other defendants in this action, should be disqualified due to their past association as partners in Owen Crumpacker's legal practice. The Court observes that since plaintiffs have not raised this contention in the form of a motion, the matter is not properly before the Court at this time. Reaching the merits of the contention, however, the Court finds the charge without support. The description of Abrahamson's and Reed's alleged use of confidential materials to plaintiffs' detriment pertains to various state court litigation. Plaintiffs do not explain why these defendants' past association with Owen Crumpacker render them inappropriate representatives of certain defendants in this action. Indeed, as defendants in this lawsuit, Abrahamson and Reed have the right to represent themselves. In the absence of more specific evidence of prejudice to plaintiffs, the Court is unwilling to say that they may not represent others in this action.

3. For example, Paragraphs 7 through 32 of the complaint list the various defendants, usually replete with a discussion of their alleged misdeeds. Paragraphs 33 through 45 then detail the purported conspiracy chronologically, often restating matters contained in Paragraphs 7 through 32. Finally, in Paragraphs 47 through 56, plaintiffs once again outline their conspiracy theory, thereby repeating what already had been stated at least twice before.

4. *See, e. g.,* Paragraph 27, which outlines defendant Kushner's purportedly illegal entry into the United States, a matter which is entirely irrelevant to plaintiffs' action and which only could have been included in an effort to color the Court's attitude toward Kushner.

*Prezzi v. Berzak,* 57 F.R.D. 149, 151 (S.D.N. Y.), *aff'd,* 469 F.2d 691 (2d Cir. 1972) ("Complaints which ramble, which needlessly speculate, accuse, and condemn, and which contain circuitous diatribes far removed from the heart of the claim do not comport with Rule 8").

Second, the complaint, in its one fifty-three page count, utterly fails to specify which defendants are liable to which plaintiffs under the various theories of recovery. Thus, the defendants are left to guess, for example, whether and on what ground Mary Eleanor is seeking to recover for the alleged conspiracy to deprive Owen of elective office, to subject him to illegal search and seizure, and to convict him of infamous crimes. Moreover, the defendants are given no guidance in determining which allegations are relevant to each of the four theories of liability. This type of pleading, which places "undue burden on the court and counsel to determine how plaintiff is here and why," *Kappus v. Western Hills Oil, Inc.,* 24 F.R.D. 123, 128 (E.D.Wis.1959), is impermissible under Rule 8. *See also Brown,* 75 F.R.D. at 499; *Brainerd,* 421 F.Supp. at 839; *Woody v. Sterling Aluminum Products, Inc.,* 243 F.Supp. 755, 760 (E.D.Mo.1965).

Third, the plaintiffs, in what appears to have been a random selection, cite nine statutory provisions in support of their cause of action. In so doing, they seemingly are oblivious to the need to distinguish between statutes that confer jurisdiction and those which create rights and remedies,[5] or the need to identify which statutory provisions support which legal theories. This buckshot method of pleading leaves "to the Court and the other parties the task of analyzing and determining the relevancy and pertinency of the cited statutes to each

claim and in relation to each of the defendants," *Woody,* 243 F.Supp. at 760, a task which properly should rest with plaintiffs.

The foregoing provides ample basis for dismissal of this complaint. Plaintiffs, however, urge that as *pro se* litigants they are entitled to an indulgent reading of their complaint. It is true that *pro se* litigants generally are not held to the same standard of proficiency as are parties represented by counsel. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972). This is because *pro se* litigants generally are without the expertise that lawyers are expected to possess. *French v. Heyne,* 547 F.2d 994, 996 (7th Cir. 1976). Since at least one of the plaintiffs, however, has been a licensed attorney for four decades, plaintiffs are not entitled to the Court's indulgence. *Hutter v. Schraml,* 51 F.R.D. 519, 521 (E.D.Wis.1970).[6] Even though Owen Crumpacker recently has been disbarred, the Court deems it appropriate to expect that he would draw upon his years of legal experience to draft a pleading that complies with the Federal Rules.[7]

■ Accordingly, plaintiffs' complaint is subject to dismissal for failure to comply with Rule 8. Such a dismissal normally is without prejudice to a plaintiff's right to file an amended complaint that properly alleges the action. *See, e. g., Kappus,* 24 F.R.D. at 128. In determining whether this course is appropriate, however, a court must consider other motions directed to the pleadings, to determine whether there are "substantial infirmities in this suit which make repleading moot." *Boruski v. Stewart,* 381 F.Supp. 529, 533 (S.D.N.Y.1974). *See also Brainerd,* 421 F.Supp. at 840; *Burton v. Peartree,* 326 F.Supp. 755, 762 (E.D.

---

**5.** For example, plaintiffs erroneously invoke the jurisdiction of the Court pursuant to 42 U.S.C. §§ 1983 and 1985, two provisions that create remedies for violation of federally-protected rights.

**6.** Owen Crumpacker's disbarment, discussed *infra,* prevents him from representing his wife, Mary Eleanor, in this action. Nonetheless, since Mary Eleanor files joint pleadings with Owen and no doubt benefits from his legal

experience, the Court will hold her to the same standard of proficiency as it does Owen.

**7.** Moreover, the Court notes that even assuming that plaintiffs were entitled to an indulgent reading of their complaint, that in itself would be insufficient to save this fatally-flawed pleading. *See Prezzi v. Berzak,* 57 F.R.D. 149, 151 (S.D.N.Y.), *aff'd,* 469 F.2d 691 (2d Cir. 1972).

Pa.1971); *Woody*, 243 F.Supp. at 760. Before turning to the motions directed to plaintiffs' substantive allegations, however, the Court first must delineate which of the various statutory provisions cited in the complaint properly may be invoked in support of the claims therein, a task made necessary by the inadequacy of plaintiffs' pleading.

At the outset, the Court observes that because the complaint contains no allegations of racial discrimination, it fails to state a claim under section 1981. *Jones v. Mayer Co.*, 392 U.S. 409, 413, 88 S.Ct. 2186, 2189, 20 L.Ed.2d 1189 (1968); *National Association of Governmental Employees v. Rumsfeld*, 413 F.Supp. 1224, 1228 (D.D.C.), aff'd, 556 F.2d 76 (D.C.Cir.1977). Similarly, the complaint fails to allege the racial or class-based discrimination that is a requisite for relief under section 1985(3) and the second portion of section 1985(2). *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971) [section 1985(3)]; *Cohen v. I.I.T.*, 524 F.2d 818, 829 (7th Cir. 1975), cert. denied, 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187 (1976) [section 1985(3)]; *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1341 (7th Cir.), cert. denied, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977) [section 1985(2)] (dictum); *Hahn v. Sargent*, 523 F.2d 461, 469 (1st Cir.), cert. denied, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976) [section 1985(2)]. The remainder of section 1985(2)—which provides remedies for conspiracies to deter witnesses from testifying, to injure them for giving testimony, to influence the result of a judicial proceeding, or to injure a juror because of his verdict—is completely irrelevant to the allegations of the complaint. The same is true of the last three portions of section 1985(1), which provide remedies for conspiracies to induce a public officer to leave the jurisdiction in which he is to perform his duties, to injure a person or his property on account of the lawful discharge of his duties, or to injure his property in an effort to impede the discharge of those duties. Only the first part of section 1985(1), which provides remedies for conspiracies to prevent by use of force, threat,

or intimidation a person from accepting or holding federal public office, potentially is relevant to this action, and even then is relevant only with respect to plaintiffs' claim concerning the 1978 and 1980 congressional elections. Jurisdiction of any well-stated action arising under this statutory provision is vested in this Court pursuant to 28 U.S.C. § 1343(1).

Plaintiffs' section 1983 claim would seem to encompass their allegation of unlawful search and seizure under the fourth amendment, and their claims under the fifth amendment for denial of just compensation and deprivation of due process. Although none of the defendants currently are state officials, the complaint does allege that one of the defendants participated in the conspiracy during his term as a state court judge. *See* Paragraph 18. This allegation is sufficient to impart to the remaining private-party defendants the state action necessary for a section 1983 claim, *Dennis v. Sparks*, —— U.S. ——, —— – ——, 101 S.Ct. 183, 186–187, 66 L.Ed.2d 185 (1980), with jurisdiction vested in this Court by 28 U.S.C. § 1343(3). Section 1983, however, may not be asserted against the federal defendants. *District of Columbia v. Carter*, 409 U.S. 418, 424–25, 93 S.Ct. 602, 606–607, 34 L.Ed.2d 613 (1973); *American Science & Engineering v. Califano*, 571 F.2d 58, 63 n.8 (1st Cir. 1975). As against these defendants, the Court assumes that plaintiffs seek to allege a *Bivens*-type claim for relief, with jurisdiction arising under 28 U.S.C. § 1331. *See Carter*, 409 U.S. at 432–433, 93 S.Ct. at 610; *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Moreover, the Court assumes that plaintiffs seek relief under 28 U.S.C. § 2410 from those federal governmental officials from whom they seek no damages. That section permits the United States to be named as a party-defendant in a civil action to quiet title to land in which the government claims a mortgage or other lien. Because plaintiffs have failed to comply with the express language of section 2410 by failing to join the United States as a defendant,

however, this section may not be invoked herein.[8]

Thus, to the extent that plaintiffs may state an action based on the statutory provisions cited in their complaint,[9] they may do so on the election claim under section 1985(1), with jurisdiction premised on 28 U.S.C. § 1343(1); and on the other claims under section 1983 and the fourth and fifth amendments, with jurisdiction arising under 28 U.S.C. § 1343(3), 1331. Pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 1988, plaintiffs may seek declaratory relief and attorneys fees.[10]

### II. The Election Claim

■ In Paragraph 2 of the complaint, plaintiffs allege that the defendants conspired to interfere with Owen's efforts to win election to the United States House of Representatives in 1978 and 1980. This claim is never mentioned again in the following fifty-two pages and fifty-five paragraphs of the pleading. There is no attempt to tie any of the numerous allegations into this claim; nor is there any prayer for relief that specifically is premised on this purported wrong. Even under the liberal construction to which pleadings are entitled on a motion under Fed.R.Civ.P. 12(b)(6), Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957), this unadorned, conclusory allegation is insufficient to state a claim for relief. Accordingly, the Court grants the defendants' motion to dismiss the plaintiffs' election claim under Rule 12(b)(6) as well as under Rule 8.

### III. The Search and Seizure Claim

■ In Paragraph 3 of the complaint, plaintiffs allege that they "have been the victims of unreasonable searches and seizures in violation of Amendment IV of the Constitution of the United States." In Paragraph 16, they allege that certain defendants masterminded these searches and seizures. Plaintiffs also refer to seizures in Paragraph 53, although it is not clear whether the reference therein is to this fourth amendment claim or to the "infamous crimes" claim. As with the election claim, plaintiffs have alleged in their search

---

**8.** The other three statutory provisions cited by plaintiffs add nothing to the Court's jurisdiction in this action. 42 U.S.C. § 1988 permits the Court to supplement the federal remedial arsenal with state law when not inconsistent with federal substantive law and to award attorneys fees to the prevailing party; 28 U.S.C. § 2201 authorizes the remedy of declaratory relief. These sections, however, do not enlarge the permissible scope of federal jurisdiction, but rather apply to certain cases already within federal jurisdiction. *Baker v. F & F Investment*, 420 F.2d 1191, 1196 (7th Cir.), *cert. denied*, 400 U.S. 821, 91 S.Ct. 42, 27 L.Ed.2d 49 (1970) (section 1988); *Dema v. Feddor*, 470 F.Supp. 152, 155, 157 (N.D.Ill.1979) (section 1988); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 878, 94 L.Ed. 1194 (1950) (section 2201); *Chance v. County Bd. of School Trustees*, 332 F.2d 971, 974 (7th Cir. 1964) (section 2201).

The final statutory provision cited—28 U.S.C. § 1441—governs the removal of actions from state to federal court. As this action originally was instituted in federal court, section 1441 is completely without relevance.

**9.** In their briefs, plaintiffs additionally cite a slew of civil and criminal statutes in support of their complaint, only two of which merit any comment at all. Since 42 U.S.C. § 1986 shares the section 1985(3) requirement of racial or class-based discrimination, that provision is in-

applicable herein. *See, e. g., Dowsey v. Wilkins*, 467 F.2d 1022, 1026 (5th Cir. 1972). Plaintiffs also urge that the complaint states a claim under 18 U.S.C. § 1964, which provides for civil actions by persons injured in their business or property by the investment or use of racketeering funds in businesses engaged in interstate commerce. As the court noted in *United States v. Cappetto*, 502 F.2d 1351, 1358 (7th Cir. 1974), *cert. denied*, 420 U.S. 925, 95 S.Ct. 1121, 43 L.Ed.2d 395 (1975), the purpose of the Organized Crime Control Act of 1970, of which section 1964 is a part, is both to protect businesses from racketeering activity and to prevent the illegal activity itself. Plaintiffs apparently do not seek injunctive relief against the alleged racketeering activity they cite in the complaint; nor do they allege harm to their business or property stemming from the use of racketeering funds, a necessary predicate for monetary relief. Thus, this section provides no basis for the claims contained in the complaint.

**10.** The Court emphasizes that this is not to say that plaintiffs in fact have stated a cause of action under these statutory provisions. Rather, it is the Court's holding that of the myriad statutes cited by plaintiffs in their complaint and briefs, only these provisions arguably may provide a basis for plaintiffs' claims.

and seizure claim very little beyond the bare conclusion that unreasonable searches and seizures in fact did occur on October 20 and 26, 1978. Paragraph 16 does indicate which of the sixty-four defendants were involved in these seizures; yet, the complaint never goes farther to allege the nature of their conduct or the resultant damage suffered by plaintiffs. The allegations that plaintiffs do make simply are insufficient to withstand a Rule 12(b)(6) motion.

Moreover, this claim for unreasonable searches and seizures already is pending before this Court in a separate action filed by plaintiffs. *Crumpacker v. Farrell*, Hammond Civil No. H 79–102 (N.D.Ind.). This in itself is a sufficient ground for dismissing the search and seizure claim. *Ohio-Sealy Mattress Manufacturing Co. v. Sealy, Inc.*, Civil No. 76 C 810, 90 F.R.D. 11 at 15 n.9 (N.D.Ill.1980); 1B Moore's Federal Practice § 0.410[2] at 1164–1165. In *Sealy*, this Court in dictum addressed the situation of an earlier-filed proceeding pending before another judge of the same district court. *A fortiori*, where the separate suits are pending before the same judge, dismissal of the later claim is particularly appropriate. Thus, the Court will dismiss the search and seizure claim with prejudice.

### IV. *The Denial of Just Compensation Claim*

This claim, which clearly forms the hub of plaintiffs' complaint, alleges that defendants conspired to deny them just compensation for Tract 02–126 in an effort to conceal a potential scandal in the award of highway construction contracts. Briefly stated, plaintiffs contend that various Indiana state officials—who are not parties to this action—created a $20,000,000 fund from which they awarded construction contracts without competitive bidding and in return received kickbacks. Paragraphs 23 through 35. This system allegedly was used as a means of "laundering" crime syndicate money. Paragraphs 16, 27. Plaintiffs state that in order to prevent discovery of this kickback scheme, defendants conspired (1) to have Owen removed as counsel in a state condemnation action which, unbeknownst to him, had been settled (¶¶ 23, 36–37); (2) to have him found guilty of contempt of court and to enforce that contempt order (¶¶ 16–18, 32, 51–53); (3) to institute disciplinary proceedings against Owen (¶¶ 17, 19, 26, 39–41, 49–51, 54); (4) to deny plaintiffs a fair hearing in the condemnation proceeding with respect to Tract 02–126 (¶¶ 7–8, 12–15, 29–31, 43–45); (5) and to convince a disaffected family member to file a baseless legal action contesting plaintiffs' ownership of, and right to just compensation for, Tract 02–126 (¶¶ 9–11, 28, 42, 45, 55). Notably absent in the complaint is any explanation of how this purported conspiracy to torment the plaintiffs accomplished the goal of concealing the alleged kickback scheme. This observation aside, however, plaintiffs' claim must fail because it relies upon underlying contentions that either already have been adjudicated or currently are the subject of litigation.

As the Supreme Court has recently noted, the related doctrines of res judicata and collateral estoppel "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, —— U.S. ——, ——, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). In addition, by according preclusive effect to state court decisions, the federal courts thereby promote "the comity between state and federal courts that has been recognized as the bulwark of the federal system." *Id.* The Court finds that all of these values would be furthered by the application of res judicata and collateral estoppel to this claim.[11]

The first two aspects of defendants' conduct of which plaintiffs complain relate to a contempt citation issued in *State of Indiana v. Kushner*, 36721–C (LaPorte Cir-

---

11. Res judicata bars further claims by parties or their privies on a cause of action that has been terminated by a final judgment. *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1877). Collateral estoppel, on the other hand, holds that once an issue is necessarily determined by a judgment, that determination may not be relitigated in a subsequent suit involving a party to the prior litigation. *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). In this case, certain of the defendants who were ad-

cuit Court, April 29, 1975), and the efforts to enforce that order. *Crumpacker v. Pruitt*, Cause No. 175–528 (Lake Superior Court, October, 16, 1978). Plaintiffs' position is that the underlying order giving rise to the contempt citation was invalid; that the contempt order itself was void; and that all efforts to enforce the order are void and are for the sole purpose of perpetuating the conspiracy. The linchpin of this theory, then, is the invalidity of the various court orders. As the Court has set forth in detail in a related case involving Owen, however, these points all have been resolved in state court proceedings. *Crumpacker v. Farrell*, 516 F.Supp. 276 at 277–278 (N.D.Ind.1981). Thus, plaintiffs are precluded from seeking to relitigate those issues by way of the instant action.[12]

■ The third element of the conspiracy alleged by plaintiffs is defendants' efforts to initiate and prosecute disciplinary proceedings against Owen. They claim that the defendants conspired to make untrue charges about Owen; to falsify the findings made by a hearing officer, which they then submitted to the Indiana Supreme Court; to prevent the state supreme court from reviewing the full record developed before the hearing officer; and to persuade the state court to disbar him without notice and hearing.[13] Once again, the underlying premise of the plaintiffs' claim with respect to this alleged conduct is that the order of the disbarment issued by the Indiana Supreme Court is void. The Indiana Supreme Court, however, in a detailed discussion of Owen's professional conduct, reached the conclusion that disbarment was the appropriate sanction. *Matter of Crumpacker*, 269 Ind. 630, 383 N.E.2d 36 (1978), *cert. denied*, 444 U.S. 979, 100 S.Ct. 481, 62 L.Ed.2d 406 (1979). Indeed, it appears that Owen presented these, or similar, objections to the Indiana Supreme Court:

> In Volume II of his brief in support of his objections, the Respondent attempts to weave thirty years of litigation in which he has been involved, including these disciplinary proceedings, into one grand master plan of conspiracy involving judges, courts and attorneys. The whole world is a fraud, everyone is driven by corrupt motives, and the only exception to this evil design is the Respondent, Owen W. Crumpacker. Consequently, the Respondent concludes that the whole world is now out to destroy Owen W. Crumpacker.

383 N.E.2d at 38. These contentions having been resolved adversely to Owen during the disciplinary proceeding, plaintiffs cannot now seek to attack them collaterally in this proceeding.

■ Plaintiffs also attack the proceeding before the Honorable Jesse E. Eschbach in which just compensation for Tract 02–126 was determined. Plaintiffs complain of a number of procedural rulings made by Judge Eschbach during the course of the just compensation litigation. Paragraph 43. These allegations, however, are virtually identical to those that were urged on appeal from the just condemnation verdict. *United States v. 416.81 Acres of Land*, 525 F.2d 450 (7th Cir. 1975); *United States v. 416.81 Acres of Land*, 514 F.2d 627 (7th Cir. 1975). Yet, once again, plaintiffs seek to reopen matters that already have been decided. This is an instance where "[i]t is clear that plaintiff either fails to comprehend the

---

versary to plaintiffs in other litigation properly may invoke res judicata; others may assert collateral estoppel to preclude plaintiffs from seeking to relitigate matters decided adversely to them in prior litigation. For this reason, the Court will not distinguish in the ensuing discussion between the application of res judicata and collateral estoppel.

12. Moreover, even assuming that plaintiffs pursue an appeal of that ruling, the Court would dismiss these claims with prejudice as duplicative of those pending in *Crumpacker v. Farrell*. *See* discussion at page 333, *supra*.

13. This last allegation is palpably untrue. In its opinion pursuant to the disciplinary proceeding, the Indiana Supreme Court noted that Owen had appeared and filed a brief in support of his objections to the disciplinary action. *Matter of Crumpacker*, 269 Ind. 630, 383 N.E.2d 36, 37 (1978), *cert. denied*, 444 U.S. 979, 100 S.Ct. 481, 62 L.Ed.2d 406 (1979). Thus, in fact the order of disbarment did not issue without notice and an opportunity for Owen to be heard.

meaning of res judicata or else stubbornly refuses to abide thereby." *Boruski v. Stewart,* 381 F.Supp. 529, 535 (S.D.N.Y.1974). On this and the foregoing three claims, plaintiffs have had their day in court. They are not entitled to relitigate those issues already decided merely because they now expand their conspiracy theory to include additional parties and lawyers who opposed them and judges who ruled against them.

The court in *Burton v. Peartree,* 326 F.Supp. 755 (E.D.Pa.1971), reached the same conclusion on a strikingly similar set of facts. There, the plaintiff originally had filed an employment discrimination action against the United States Post Office. His claim was denied by the Court of Claims, and certiorari was denied by the Supreme Court. Thereafter, plaintiff filed suit against the Post Office seeking to relitigate the employment discrimination claim, but in addition naming as defendants the Justices of the Supreme Court and their clerks, the judges of the Court of Claims and their clerks, and members of the Justice Department who opposed them in the original litigation, alleging that they all were part of a conspiracy to deny him relief on his claim. *Id.* at 758.

The pleading in this case reflects a similar style of litigation. Rulings adverse to plaintiffs become a means of expanding rather than resolving litigation; the scope of the wrongs against plaintiffs increase incrementally with each adverse decision. This approach to litigation flies in the face of all the values embodied in res judicata and collateral estoppel. Thus, as with the first three elements on their just compensation claim, the Court finds that plaintiffs are precluded from the fourth element, Judge Eschbach's rulings in the proceeding to determine just compensation for Tract 02–126.

█ The fifth point raised by plaintiffs in their conspiracy theory is that a proceeding instituted by members of the Crumpacker clan to challenge plaintiffs' ownership in Tract 02–126 is invalid and merely is an attempt to deny plaintiffs their just compensation. In that action, however, a jury found plaintiffs herein liable for $78,-250.00 in damages for fraud, negligence, and conversion stemming from their conduct with respect to Tract 02–126. In addition, the Honorable Phil M. McNagny, Jr., who then presided over that action, found that Owen possessed only a one-half ownership interest in Tract 02–126. *Crumpacker v. Crumpacker,* 516 F.Supp. 292 (N.D.Ind. 1980). Plaintiffs herein have appealed both of those judgments. Thus, to the extent that plaintiffs wish to contest the jurisdiction of the Court to issue its rulings in 75–212 (¶ 55) or Judge Eschbach's alleged refusal to order payment of just compensation until *Crumpacker v Crumpacker* had been filed (¶ 45), they are free to do so on appeal of the judgments in 75–212. Given the pendency of those appeals, however, the Court deems it inappropriate to entertain these issues in the instant proceeding. *See* discussion at page 333, *supra.*

Accordingly, since all of the matters underlying plaintiffs' just compensation claim either have been litigated to finality or are the subject of earlier-filed proceedings that still are pending, the Court dismisses the just compensation claim with prejudice.

## V. *The "Infamous Crimes" Claim*

█ This claim, though alleged as a separate basis for relief, is a part of the overarching conspiracy by which defendants allegedly sought to deprive plaintiffs of just compensation for their land. Specifically, it attacks the contempt citation and the attempts at enforcement thereof as violations of due process. As stated in the above discussion, however, this point—which also has been raised in other litigation pending before this Court—has been decided in numerous state court proceedings. Accordingly, this claim as well will be dismissed with prejudice.

## VI. *Conclusion*

Because plaintiffs' complaint fails to comply with the minimal requirements of Fed. R.Civ.P. 8, it is subject to dismissal. In addition, since plaintiffs' claims concerning search and seizure, just compensation, and conviction of infamous crimes without due

process all suffer from "substantial infirmities" which would make repleading a futile exercise, *Boruski v. Stewart*, 381 F.Supp. 529, 533 (S.D.N.Y.1974), the dismissal is with prejudice as to those three claims.

The only remaining question is whether the claim that defendants interfered with Owen's election campaigns should be dismissed as well. The foregoing dismissal of the election claim is premised solely on Rules 8 and 12(b)(6), not normally grounds which pose an insuperable bar to repleading. It does seem evident, however, that plaintiffs premise the election claim on the same allegations which the Court has held they are precluding from relitigating in this action, although the sparse nature of the pleading on this point makes it impossible to say this with certainty. Moreover, in considering whether the dismissal should be entered with prejudice, the Court cannot blind itself to the past conduct of plaintiffs in pursuing their claims. *See, e. g., Brown v. Califano*, 75 F.R.D. 497, 499 (D.D.C.1977); *Hutter v. Schraml*, 51 F.R.D. 519, 522 (E.D. Wis.1970).

During the past six months, the Court has had before it no less than eight other lawsuits involving plaintiffs, many of which cover the same ground as the instant case.[14] The foregoing discussion of plaintiffs' claims in this case accurately reflects their approach to litigation and requires no further elaboration. On the basis of the pleading in this case and the other actions involving the Crumpackers, the Court is satisfied that permitting plaintiffs to replead the

election claim "will needlessly waste time and effort." *Brown*, 75 F.R.D. at 499. Thus, as in *Brown* and *Hutter*, the Court will dismiss the election claim pursuant to Rules 8 and 12(b)(6), and will do so with prejudice.

Accordingly, plaintiffs' complaint in its entirety is dismissed with prejudice. It is so ordered.[15]

---

**14.** *Crumpacker v. Farrell*, Hammond Civil No. H 79–161 (N.D.Ind.); *Crumpacker v. Farrell*, 516 F.Supp. 276 (N.D.Ind.); *Crumpacker v. Farrell*, Hammond Civil No. H 79–102 (N.D. Ind.); *Crumpacker v. Farrell*, Hammond Civil No. H 79–86 (N.D.Ind.); *Crumpacker v. Andrus*, 516 F.Supp. 286 (N.D.Ind.); *United States v. 20.00 Acres of Land*, 516 F.Supp. 299 (N.D.Ind.); *Crumpacker v. Crumpacker*, 516 F.Supp. 292 (N.D.Ind.); *Ennis v. Woodmar Realty Company*, 89 F.R.D. 136 (N.D.Ind.); *United States v. 416.81 Acres of Land*, Hammond Civil No. H 70–79 (N.D.Ind.). Plaintiffs contend that the Court may not take judicial notice of Court records, particularly in determining a motion to dismiss. It is clear, however, that a Court may take judicial notice of other related cases pending before it. *In Re*

*Dunn*, 251 F.Supp. 637, 641 (M.D.Ga.1966); 10 Moore's Federal Practice ¶ 201.02[1] at 20–21. Moreover, there is authority for the proposition that a Court may notice the decisions of other courts in related litigation. *See, e. g., International Moulders and Allied Workers v. Buchanan Lumber Birmingham*, 459 F.Supp. 950, 953 n.3 (N.D.Ala.1978), *aff'd*, 618 F.2d 782 (5th Cir. 1980).

**15.** The defendants raise several other grounds in support of their motions, including immunity and lack of subject matter jurisdiction. The Court's decision, however, makes it unnecessary to express a view on the merits of these other contentions.