**Russell L. MAWHINNEY, Plaintiff,**

v.

**Margaret HECKLER, Secretary Health & Human Services, Defendant.**

**Civil No. 84–0190 P.**

United States District Court,
D. Maine.

Jan. 15, 1985.

---

Robert Checkoway, Preti, Flaherty & Beliveau, Portland, Me., for plaintiff.

Paula D. Silsby, Asst. U.S. Atty., Portland, Me., for defendant.

## MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION FOR EXTENSION OF TIME AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

GENE CARTER, District Judge.

I.

This is an action brought under 42 U.S.C. § 405(g) for review of the final decision of the Secretary of Health and Human Services, which denied Plaintiff's application for a period of disability and for disability insurance benefits under 42 U.S.C. §§ 416(i) and 423. An Administrative Law Judge found on December 30, 1983, that Plaintiff was not under a disability. The Appeals Council approved the ALJ's decision on May 10, 1984.

Plaintiff filed a Motion for Summary Judgment on November 1, 1984. The Secretary's Cross-motion for Summary Judgment was due on December 17, 1984. No such motion was filed by that date, and, on December 18, 1984, the Secretary moved for an extension of time in which to file her cross-motion with supporting memorandum of law. Plaintiff has objected to the Motion for Extension of Time.

Fed.R.Civ.P. 6(b) provides in pertinent part:

> When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion ... (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act is the result of excusable neglect.

The only reason given by the Secretary for failure to timely file a motion and supporting memorandum of law was "that the Regional Attorney's office, Health and Human Services, in Boston, Massachusetts, was not able to complete the brief due to be filed this date because of a backlog of cases." This does not amount to a showing of excusable neglect. *Cf. McDermott v. Lehman,* 594 F.Supp. 1315 (D.Me.1984);

*Greene v. Union Mutual Life Ins. Co.*, 102 F.R.D. 598 (D.Me.1984). Although judgment by default is not proper in this case, *Alameda v. Secretary of Health, Education and Welfare*, 622 F.2d 1044 (1st Cir. 1980), "the Court is not without resources of a compulsory nature to force the Secretary to comply with its statutory and procedural duties with respect to progress of this litigation." *Montrose v. Heckler*, 579 F.Supp. 240, 242 (D.Me.1984); *Poliquin v. Heckler*, 597 F.Supp. 1004 (D.Me.1984). In analogous circumstances, the Court has refused to permit the party who fails to file a timely opposition to a motion for summary judgment under Local Rule 19 to submit materials in opposition and has decided the motion with reference to the moving party's submissions alone. *See McDermott v. Lehman.* Accordingly, the Court finds that the Secretary, by failing to timely file a motion and supporting memorandum of law in opposition to Plaintiff's motion or a motion for extension of time, has waived her right to file an opposing memorandum of law, and the case will be decided based on Plaintiff's submissions alone.

## II.

The standard of this Court's review is whether the determination made by the Secretary is supported by substantial evidence. 42 U.S.C. § 405(g); *Lizotte v. Secretary of Health and Human Services*, 654 F.2d 127, 128 (1st Cir.1981). The determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusions drawn. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

The Court has thoroughly reviewed the transcript of the administrative proceedings, the exhibits presented, the decision of the ALJ, and Plaintiff's brief. After careful consideration, the Court finds that there is not substantial evidence to support the Secretary's decision that the claimant was not disabled within the meaning of the Social Security Act.

The claimant has been diagnosed as having progressive, unstable degenerative disc disease and spondylolisthesis of sections of his spine. Record at 140. He discontinued his work as a maintenance foreman at a paper mill on October 3, 1982. The ALJ found that he is unable to perform his past relevant work, but that he has the residual functional capacity to perform the full range of sedentary and light work. *See* 20 C.F.R. § 404.1567. Accordingly, the ALJ found, based upon the testimony of a vocational counselor and upon the medical-vocational guidelines, 20 C.F.R. Part 404, Appendix 2, Subpart P, Rules 201.11 and 202.-12, that the claimant was able to perform a number of jobs existing in significant numbers in the national economy. *See* 20 C.F.R. 404.1566.

There is extensive medical evidence to the effect that the claimant has severe lumbar spine problems, and the ALJ so found. The ALJ found, however, and the claimant does not dispute, that the claimant does not have an impairment or combination of impairments listed in or medically equal to one of those listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. The issue reduces to whether there is substantial evidence to support the ALJ's conclusion that the claimant's pain, resulting from his well-documented severe lumbar spine problems, does not prevent him from doing light or sedentary work.

The Court of Appeals for the First Circuit has described the substantial evidence standard of review as follows:

In reviewing the record for substantial evidence, we are to keep in mind that "[i]ssues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Secretary." The Secretary may (and under his regulations must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or the courts. We must uphold the Secretary's findings in this case if a reasonable mind, review-

ing the record as a whole, could accept it as adequate to support his conclusion. *Rodriguez v. Secretary of Health and Human Services*, 647 F.2d 218, 222 (1st Cir. 1981) (citations omitted).

The claimant testified that he suffers constant back pain. Record at 31, 68. He said he can sit for about ten minutes at a time and stand for no longer than half an hour. Record at 33. After standing for half an hour, he has to bend over in order to relieve the pain. Record at 68. In order to relieve his pain, he must use what he calls "a model lounge chair" at least a dozen times a day for a total of three or four hours a day. Record at 69. He sleeps with his knees pulled up to his chin. Record at 57. When he falls asleep, his legs will stretch out and wake him, and therefore, he sleeps "brokenly" only four to five hours a day. Record at 58.

The claimant testified that before his back pain became severe two years earlier, he skied frequently. Record at 65. He played golf two or three times a week, and had a handicap of eight. Record at 64. He owned a summer camp, and hunted and fished frequently. Record at 61, 62, 63. In the two years prior to his testimony, the claimant testified, he had been unable to pursue any of these activities, except that he had gone fishing two or three times in a boat. *Id.*

On the other hand, the claimant testified that he was able to perform the basic activities associated with keeping a household. He lives alone. He does grocery shopping two or three times a week. Record at 37. He does his own cooking, dishes and sweeping. Record at 45. However, his sister cleans his house twice a week. Record at 46. He goes out each day to get his mail and morning paper. Record at 47.

The claimant testified that he now spends much of his time bird watching, photographing wild life that comes into his yard, and feeding wild animals near his home. Record at 41, 48, 71. He walks a half mile to his neighbor's house through the woods approximately once a week. Record at 72.

As the ALJ noted, there is extensive objective medical evidence supporting the claimant's complaints of pain. The only question is whether the pain is as disabling he says it is.

On March 28, 1983, David Phillips, M.D., a treating physician, stated that the claimant is "unable to carry on the activities of daily living in a comfortable fashion. He has difficulty getting up and down. He has difficulty sitting for any period of time." Record at 151. Dr. Phillips also stated:

> He has been on non-steroidal anti-inflammatories and the use of Amitriptyline at bedtime for pain relief along with Bufferin. He previously has used a corset. He has been unable to tolerate any physical therapy or exercises. Response has been nil. He has also received two epidural blocks with no relief.

Record at 154.

At the request of the Secretary, the claimant was examined by Gerald Abraham, M.D., a psychiatrist. With respect to the credibility of the claimant's complaints of pain, Dr. Abraham stated:

> This apparently healthy man with a history of hard work terminating last year appeared throughout the interview to be suffering from a great deal of discomfort. *There seemed to be no dishonesty in his approach with no evidence of embroidering in his story.*

Record at 169 (emphasis added).

The claimant was also examined by a clinical psychologist, Nicholas J. Rehagen, Ph.D., for the purpose of evaluating "possible psychological aspects of pain Mr. Mawhinny [sic] is experiencing." Record at 191. Dr. Rehagen's report was admitted into evidence after the ALJ's decision. Dr. Rehagen reported:

> Mr. Mawhinny [sic] indicates that his interests and activities have been markedly curtailed due to the pain and he finds himself becoming extremely frustrated and sometimes depressed because of the limitations that are imposed upon him by the pain. He stated to me also

that he has quite a struggle avoiding becoming bitter and spends a great deal of energy trying to keep up a positive attitude although the future looks grim to him. He is an individual who enjoyed his work and appears to me to be having a difficult time adjusting to an unemployed/disabled status.

Regarding the tests administered, Mr. Mawhinny [sic] took all the tests willingly and during the interview, he presented himself in a candid and honest manner. *I found no indication of attempts to exaggerate his claims and, in fact, he has a tendency to present himself in a somewhat "tough poise."*

Record at 191 (emphasis added). Dr. Rehagen further stated that the tests he performed "suggested there is no evidence of malingering or attempts to present himself in an unfavorable manner or in a way to exaggerate his claims." Record at 192. Finally, Dr. Rehagen stated:

On the basis of the interview and test results, it is my impression that Mr. Mawhinny [sic], both from observation and self report, is experiencing severe pain and this pain is of such a degree that it will interfere with even sedentary work. Mr. Mawhinny [sic] was not able to remain seated for more than about ten minutes without wincing and needing to pace and do so in a genuine and authentic manner.

Record at 192.

The claimant underwent an extensive series of tests performed by Philip B. Haber, a psychologist at Metropolitan Rehabilitation Services, Inc. His report also was admitted after the ALJ issued his decision. The psychologist noted in passing that the claimant was "unable to tolerate more than three hours of evaluation at any one sitting." Record at 202. The testing included psychological testing, interest evaluations, and performance of "hands on" simulated work tasks. Haber concluded that the claimant was incapable of sustained occupational activity in the regional economy. He explained:

I base this finding on his inability to tolerate light and sedentary work effort for even a half day and the very significant pain behavior which was noted during the evaluation.

Record at 205.

The reports of Dr. Abraham, Dr. Rehagen, and Mr. Haber constitute substantial expert evidence which strongly corroborates the claimant's subjective complaints of pain. The record contains no evidence that is inconsistent with these reports.

The Court is at a loss to find any substantial evidence in this extensive record to discredit the claimant's complaints of severe pain. The ALJ did not expressly state upon which evidence he relied in deciding that claimant's complaints of pain were neither persuasive nor credible. Apparently, however, the ALJ found it significant that the claimant

is able to walk up to one half mile and does so several times a week when he hikes through the woods around his home. Also it is noted that he is able to perform most household chores.

Record at 15. The ALJ noted also that one physician, Dr. John W. Wickenden, an orthopedic surgeon, stated that there might be a psychological component to the claimant's problems. Record at 15. This evidence, however, is not inconsistent with the claimant's assertion that his pain disables him from doing any kind of work on a sustained basis. It does not discredit the claimant's testimony, nor does it in any way contradict the opinions of the three professionals who examined the claimant with particular attention to the credibility of his complaints of pain.

In sum, there is not substantial evidence to support the ALJ's conclusion that the claimant has the residual functional capacity to perform light or sedentary work. The record in this case does not present a picture of a malingerer. Rather, the picture that emerges is one of a formerly extremely active man who enjoyed his work and outdoor activities, who now is struggling to do as much as he can in spite of his pain. The following excerpt from

the claimant's testimony at his hearing illustrates this point:

Q [by claimant's attorney] When you do walk, you have indicated that you walked to your neighbor's, and you may walk out to get your mail and the newspaper. How would you describe the method by which you walk and how long it takes you to walk?

A I walk very slow.

Q Why?

A Because I never know what my left leg is going to do for me.

Q Is there any pain associated with the leg?

A Yes, sir.

Q Why do you continue walking if there's pain associated with the leg?

A You have to do something. You've got to do something.

Record at 73–74.

It is ORDERED that the decision of the Secretary is REVERSED, and the Secretary is ORDERED to commence payment of disability insurance benefits to Plaintiff immediately and retroactive to October 3, 1982, in accordance with his entitlement under the Social Security Act.

So ORDERED.