**LOVELADIES HARBOR, INC. and Loveladies Harbor, Unit D, Inc., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 243–83L.**

United States Claims Court.

Aug. 12, 1988.

Kevin J. Coakley, Roseland, N.J., for plaintiffs.

Michael M. Wenig, Washington, D.C., with whom was Acting Asst. Atty. Gen. Roger J. Marzulla, for defendant.

### ORDER

SMITH, Chief Judge.

This dispute involves a request by defendant to file its affidavits out of time under RUSCC 6(b)(2). The purpose of these affidavits is to supplement defendant's response to plaintiffs' cross-motion for partial summary judgment presently pending before the court. Plaintiffs have responded by opposing defendant's motion contending that these supplemental affidavits were filed in bad faith and if accepted would be of prejudice to plaintiffs' position. For the reasons set forth below, the court

believes that defendant's motion to file its supplemental affidavits out of time under RUSCC 6(b)(2) should be accepted. Therefore, these affidavits will be considered as part of defendant's response to plaintiffs' cross-motion for partial summary judgment.[1]

### Undisputed Facts

Plaintiffs brought this action against the United States on April 14, 1983. In their complaint, plaintiffs alleged that the government had so regulated plaintiffs' property that plaintiffs were entitled to just compensation under the Fifth Amendment.

In 1956, plaintiffs purchased a 250 acre tract of land. By the time this action was instituted, much of the land had been sold, and only 57.4 acres of the original tract remained in plaintiffs' possession. Out of those 57.4 acres, only 6.4 of those acres were ever developed. The other fifty-one acres were comprised of wetlands, and their development has been side-tracked by state and federal action. The state effectively prevented plaintiffs from developing 38.5 acres of those wetlands when the state refused to issue its required fill permits. The Corps prevented the development of the other 12.5 acres of wetlands when the Corps refused to issue the fill permits, required by the federal government. It is the Corps' refusal to issue a fill permit for 12.5 acres of plaintiffs' wetlands which plaintiffs contend constitutes the taking requiring just compensation under the Fifth Amendment.

The period of discovery in this case lasted from March 8, 1985, until October 7 of that same year. In that period, each party formulated their own estimations of the property's fair market values before and after the permit was denied. From these investigations, both parties determined that they were in substantial agreement over the value of the 12.5 acres before the permit denial. This value was estimated at approximately $4 million.

Yet, both parties could not agree as to the value of those 12.5 acres after the permit denial. According to plaintiffs' valuation, conducted by the Ard Appraisal Company (Ard), the value of the land after the denial amounted to $13,725.50. Defendant, on the other hand, while contesting that plaintiffs' estimates were far too low, could not complete its own estimates of the property's post-denial value within the discovery period. The only information which defendant could provide to plaintiffs was the names of defendant's two expert appraisers that defendant intended to call at trial. One of these experts was from the Ragan Design Group and the other was from Todd and Black, Inc.

---

1. Besides its arguments against the introduction of defendant's affidavits, plaintiffs' brief in opposition also contained several arguments and affidavits replying to the substance of defendant's untimely submissions. These arguments should not have been included in that brief. Rather, plaintiffs should have attached these arguments and affidavits to a motion under RUSCC 6(b) to supplement their reply to their cross-motion for partial summary judgment since these arguments and affidavits should have been attached to plaintiffs' reply. Nevertheless, these arguments and affidavits will be allowed because they were made in reply to the unanticipated introduction of defendant's untimely filed affidavits. *Cf.* RUSCC 6(b) ("Where a motion for enlargement is based on the occurrence of some unanticipated event, counsel must file the motion promptly upon learning of the event.")

Defendant's reply to its motion to file out of time under RUSCC 6(b) also contains several arguments and affidavits which do not relate to the motion for enlargement. These affidavits and arguments, instead, provide further substantive support to defendant's untimely filed affidavits. These additional arguments and affidavits will, therefore, not be allowed because they, in effect, amount to a response to plaintiffs' reply; and the rules of this court do not provide for the filing of such an item. In motions, the rules only allow the parties to file an initial brief in support, a brief in response, and a brief in reply. *See* RUSCC 83.1; *Cf. United States v. IBM Corp.*, 66 F.R.D. 383, 384 (S.D.N.Y. 1975) (even reply briefs should not be used unless the reply addresses new issues raised in the respondent's pleading in opposition or unless a request is specifically made by the court.) The rules do not allow for a brief in response to a reply, and the court finds no reason to change that rule since at some point briefing must come to an end. Further, no specific or satisfactory reason has been shown for allowing such a filing here.

After the conclusion of discovery, both parties kept in contact with each other in order to resolve the problem caused by the delay in defendant's experts. As a result of those discussions, three points of agreement emerged between the parties. First, defendant indicated to plaintiffs that defendant intended to file a motion for summary judgment. Defendant further indicated to plaintiffs that its summary judgment motion would not relate to the value of the land after the alleged taking and would not related to any other facts which would require the production of defendant's experts. Lastly, defendant agreed to provide all of the information plaintiffs requested regarding defendant's experts as soon as that information became available to defendant.

Defendant then filed its motion for summary judgment under RUSCC 56 on December 18, 1985, and a corrected version of that motion on January 31, 1986. In its motion, defendant argued that plaintiffs failed to establish that a taking had occurred as a matter of law even if the court assumed that plaintiffs were correct in estimating the post-taking value of the 12.5 acres at $13,725.50. Attached to defendant's motion for summary judgment was an appendix and its statement of uncontroverted fact. Both of these attachments treated the $13,725.50 estimation by plaintiffs' appraiser, Ard, as true for the purpose of defendant's motion for summary judgment.

The main thrust of the argument raised in defendant's motion was that the post denial value of the 12.5 acres was irrelevant in the determination of whether or not plaintiffs' land had been taken under the Fifth Amendment because the court was required to view plaintiffs' property as a whole. *E.g., Penn Cent. Transp. Co. v. N.Y.*, 438 U.S. 104, 130–31, 98 S.Ct. 2646, 2662–63, 57 L.Ed.2d 631 (1978); *Deltona Corp. v. United States*, 228 Ct.Cl. 476, 489, 657 F.2d 1184, 1192 (1980) (quoting *Penn Cent. Transp. Co. v. United States*, 438 U.S. at 130–31, 98 S.Ct. at 2662–63), *cert.*

*denied*, 455 U.S. 1017, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982). The whole alleged by defendant was the original 250 acres purchased by plaintiffs or at a bare minimum the 57.4 acres still held by plaintiffs at the time of the permit denial. Therefore, defendant concluded, that even if the permit denial reduced the effected 12.5 acres from a value of approximately $4 million to a value of only $13,725.50, the reduction was a mere diminution in value not compensable by the Fifth Amendment when compared to the value of the 57.4 acre or the 250 acre whole.

Plaintiffs responded to defendant's motion for summary judgment by opposing defendant's motion and by filing a cross-motion for partial summary judgment. The purpose of plaintiffs' cross-motion for partial summary judgment was to request that the court find that defendant's actions had constituted a taking of plaintiffs' property as a matter of law.[2]

Both plaintiffs' response and cross-motion were filed as one combined brief. *See generally* RUSCC 83.2(e) (a party filing a cross-motion is required to file its argument in support of the cross-motion and in response to the other parties motion in the same brief). Attached to this brief was a statement of uncontroverted fact and an appendix. Plaintiffs' statement of uncontroverted fact alleged that the effected 12.5 acres of property had a value of only $13,725.50 after the permit denial, and the appendix included Ard's appraisal in support of that figure.

The central argument of plaintiffs' brief concerned how plaintiffs' property should be defined in determining whether or not a taking had occurred. *Penn Cent. Transp.*, 438 U.S. at 130–31, 98 S.Ct. at 2662–63. Specifically, plaintiffs contended that the court should not compare the loss of value in the affected 12.5 acres to the value of the 250 acre tract or to the value of the remaining 57.4 acres as was argued by defendant. Instead, plaintiffs argued that

---

**2.** This order is being issued simultaneously with that opinion. *See generally Loveladies Harbor,*

*Inc. v. United States*, 15 Cl.Ct. 381 (1988).

only the 12.5 acres should be considered as the whole, and that this court should compare the value of the 12.5 acres before the permit denial to the value of those same 12.5 acres after the permit denial. Having made this comparison, plaintiffs concluded that a taking must have occurred as a matter of law because the 12.5 acres had dropped from a value of approximately $4 million to a value of only $13,725.50.

Defendant's reply to its own motion for summary judgment and its opposition to plaintiffs' cross-motion was also filed as one combined brief. *See generally* RUSCC 83.2(e). Defendant did not attach any appendices or affidavits but only a few responses contesting plaintiffs' proposed findings of fact. None of defendant's responses contested the validity of plaintiffs' Ard appraisal which estimated the post taking value of the effected 12.5 acres at $13,725.50.

By the end of April, all of the supporting and opposing briefs required for defendant's motion and for plaintiffs' cross-motion had been submitted to the court. On May 19, the court allowed both parties to file supplemental briefs in order to determine what effect, if any, the Federal Circuit's decision in *Florida Rock Indus., Inc. v. United States* had upon plaintiffs' takings claim. 791 F.2d 893 (Fed.Cir.1986), *cert. denied,* 479 U.S. 1053, 107 S.Ct. 926, 93 L.Ed.2d 978 (1987). Both parties filed these supplemental briefs in early June. Oral argument was then scheduled for July 2, 1986, on both defendant's motion for summary judgment and plaintiffs' cross-motion for partial summary judgment.

On June 27, five days before oral argument, defendant filed a motion for leave in order to supplement its response to plaintiffs' cross-motion for summary judgment.[3] The purpose of defendant's motion was to supplement defendant's response with the affidavits from the Ragan Design Group and from Todd and Black, Inc. Both of these appraisals maintained that the disputed 12.5 acres had a value of more than a

half a million dollars after the permit denial. The appraisals were in direct contrast to plaintiffs' appraisal which estimated the post permit denial value of the land at $13,725.50. This dispute was not initially raised in defendant's response to plaintiffs' cross-motion for partial summary judgment but was later raised a few days before oral argument when it filed a motion to supplement its response.

When oral argument was held, plaintiffs opposed defendant's motion to supplement. It is this dispute over whether or not this court should allow defendant to supplement its response with the appraisals from the Ragan Design Group and from Todd and Black, Inc. which is the subject of this order.

## DISCUSSION

Normally, when a motion or response to a motion is supported by affidavits, those affidavits must be filed with the corresponding motion or response. *See* RUSCC 56. Therefore, defendant's affidavits from the Ragan Design Group and from Todd and Black, Inc. challenging plaintiffs' estimation of the post denial value of the 12.5 acres alleged in plaintiffs' cross-motion for partial summary judgment should have been attached to defendant's response. That response was filed in late March.

Defendant failed to attach these affidavits to its response or to at least attach some notification of defendant's intent to file the affidavits at some later date. Instead, defendant simply submitted these affidavits to the court for the first time in late June. Defendant concedes that the submission of these affidavits was untimely but requests the court's leave to allow the filing of these affidavits out of time.

■ While it is within the court's discretion to allow the submission of untimely affidavits, *e.g., In re Buckingham Super Markets, Inc.,* 534 F.2d 976, 977 (D.C.Cir. 1976) (per curiam); *Burton v. Peartree,* 326 F.Supp. 755, 759 (E.D.Pa.1971), the court's discretion to make such an allow-

---

**3.** Defendant's motion was only for the purpose of supplementing its response to plaintiffs' cross-motion for partial summary judgment.

Defendant's motion did not include a request to supplement its own motion for summary judgment.

ance is not completely unfettered. The court can only allow late filings "where the failure to act was the result of excusable neglect...." and where counsel has filed a motion for enlargement "at the earliest practicable time." RUSCC 6(b). *See generally* 4A C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1165 (2d ed. 1987).

*Cause Resulting in Both Affidavits' Delay*

■ Defendant's failure to submit these affidavits with its response to plaintiffs' cross-motion for summary judgment did result from excusable neglect. Defendant's lack of timeliness was not caused by the press of other business or some other significant matter within defendant's control. RUSCC 6(b) (press of other matters or acts within a party's control does not constitute excusable neglect); *see also McLauglin v. City of Lagrange,* 662 F.2d 1385, 1387 (11th Cir.1981) (per curiam) (fact that party was a solo practitioner and engaged with other cases does not constitute excusable neglect for party's delay), *cert. denied,* 456 U.S. 979, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982); *Mawhinney v. Heckler,* 600 F.Supp. 783, 784 (D.Me.1985) (delay caused by backlog of cases does not constitute excusable neglect). Rather, defendant's delay stemmed solely from its experts who had the task before them but who were slow in formulating their opinions. *Bown v. Boles,* 258 F.Supp. 111, 113 (N.D.W.Va.1966) (difficulties securing records requested constituted excusable neglect).

This is not to say that the failure to produce an affidavit should always be considered excusable where the fault lies with a party's witnesses, experts or otherwise. Here, however, the court can excuse such a delay since defendant's actions were not done in bad faith and since the introduction of defendant's affidavits at this point in the proceedings will not be of any prejudice to plaintiffs. *See, e.g., United States v. Miller Bros. Constr. Co.,* 505 F.2d 1031, 1035 (10th Cir.1974): *Tatterson v. Koppers Co.,* 104 F.R.D. 19, 20 (W.D.Pa.1984).

The late filing of defendant's affidavits was not part of some tactical decision or attempt to catch plaintiffs' counsel off-guard. Defendant's disagreement with plaintiffs over the value of the 12.5 acres after the permit denial was known to plaintiffs before both parties had filed their motions for summary judgment. Defendant did inform plaintiffs of defendant's disagreement in its response to plaintiffs' interrogatories. In that response, defendant also informed plaintiffs of defendant's intent to utilize two experts at trial; and that one expert would be from the Ragan Design Group, and that the other would be from Todd and Black, Inc.

Yet, plaintiffs contend that defendant's actions were in bad faith on two grounds. First, plaintiffs assert that defendant's actions were in bad faith because defendant failed to seasonably supplement its response to plaintiffs' interrogatories as required by RUSCC 26(e). Although it is clear that defendant was required to seasonably update any newly received information, this court fails to understand how defendant violated that duty. After all, defendant could hardly have supplemented its response with its affidavits before defendant itself had those affidavits. Plaintiffs' second argument is that defendant's affidavits were filed in bad faith because defendant was attempting to change its legal position in light of *Florida Rock,* which had just been issued one month before. This court, however, does not agree with plaintiffs' analysis of *Florida Rock* and, therefore, finds this argument equally without merit.[4]

---

4. In defendant's initial briefs, one of defendant's arguments was that the regulation was not so intrusive as to constitute a taking because the effected land was left in its natural state, and therefore, the land could still be used or sold for conservational and recreational purposes. It is this contention which plaintiffs allege defendant attempted to change in light of *Florida Rock.* Specifically, plaintiffs contend that this argument was undercut by the Federal Circuit's decision, and that defendant's late filings were submitted in order to mitigate that decision's impact.

Yet, as stated above, this court disagrees with plaintiffs' understanding of the Federal Circuit's decision in *Florida Rock* on this point. The Federal Circuit's decision did not undercut de-

This court also fails to find any resulting prejudice to plaintiffs' position if defendant's affidavits are allowed. Although defendant's affidavits were submitted only a few days before oral argument, the court has provided plaintiffs with an opportunity to offer their reply by admitting certain arguments and affidavits contained in plaintiffs' response to defendant's motion to allow its affidavits out of time. *See supra* note 1. Plaintiffs have only lost their ability to depose defendant's experts, and that loss too can be mitigated. The court has merely to order the reopening of discovery for the purpose of deposing defendant's experts should trial in this case be necessary.[5]

*Cause Resulting in Motion for Enlargement's Delay*

As stated above, a party is not only required to show that its late filings resulted from excusable neglect in order to have those filings accepted out of time. That party must further show that it attempted to file its motion for enlargement at the earliest practicable time; or at least, show that the party's delay in filing a motion for enlargement was also the result of excusable neglect. *See Davidson v. Keenan*, 740 F.2d 129, 132 (2d Cir.1984); *see also Margoles v. Johns*, 587 F.2d 885, 888 (7th Cir. 1978) ("It would appear to ... [the court] when facing a procedural deadline because of factors supposedly beyond control counsel are unable to comply that counsel would always be well advised to file before the crucial date a motion for extension setting forth specifically the reasons for the request.")

The need for defendant's affidavits arose when its response to plaintiffs' cross-motion for partial summary judgment was due. It was, at that time, when defendant should have become aware of the fact that a failure to contest plaintiffs' valuation of the 12.5 acres after the permit denial could have resulted in partial summary judgment in plaintiffs' favor. Thus, defendant did not file its motion for enlargement at the earliest practicable time, and defendant must show that this delay was the result of excusable neglect.

Defendant's failure to respond was in part due to its reliance on prior conversations with plaintiff.[6] During those conversations, both parties discussed their concern over the problems defendant was having in obtaining its appraisals. In order to prevent those delays from slowing the pace of litigation, defendant informed plaintiffs that it would file a motion for summary judgment which would not require the resolution of the post denial value of the disputed 12.5 acres.

When defendant filed its motion for summary judgment, plaintiffs did not respond as expected. This is because plaintiffs did not merely file a response to defendant's motion for summary judgment but instead filed a cross-motion for partial summary judgment as well. The cross-motion had no resulting effect upon the legal arguments involved; indeed, those arguments remained exactly the same.

The cross-motion, however, did change the possible procedural outcome of the case. Had defendant's arguments been rejected by the court and had plaintiffs simply filed a response, the case would have proceeded to trial on both the issues of liability and damages. Defendant was, therefore, able to assume plaintiffs' appraisal of the 12.5 acres after the permit

---

fendant's theory. In fact, it tended to support it. In that case, the Federal Circuit held that a governmental regulation may not constitute a taking even if that regulation left the land with no immediate use. The key question in that situation then would be whether or not the land had any speculative value. *See generally Florida Rock Indus. Inc. v. United States*, 791 F.2d 900–06. Thus, plaintiffs' bad faith argument must be rejected in view of its faulty premise.

5. Defendant has also informally agreed to provide its expert witnesses for deposition should

the court deny both parties summary judgment motions forcing the case to go to trial. Since this court has decided to deny both motions, *see generally supra* n. 2, it will allow a request by plaintiff for further discovery on both witnesses should one be filed.

6. This court does not mean to suggest that plaintiffs' conduct was disingenuous or made in bad faith. The court merely recites the circumstances of the situation in order to show the reasons for defendant's oversight.

denial as true without compromising its case. Yet, once plaintiffs had filed a cross-motion for partial summary judgment, defendant no longer had the luxury of assuming plaintiffs' post permit denial valuation. For if defendant's arguments were then rejected, the issue of liability would have to be resolved in plaintiffs' favor, and the case could have proceeded to trial only on the issue of damages.

It is clear that defendant failed, at first, to recognize the significance of the procedural effect of plaintiffs' cross-motion, and that this failure was the central cause of defendant's delay. Although such delays caused by inadvertence and oversight are normally not considered excusable, *e.g.*, *Graham v. Pennsylvania R.R.*, 342 F.2d 914, 915 (D.C.Cir.1964) (per curiam), *cert. denied*, 381 U.S. 904, 85 S.Ct. 1446, 14 L.Ed.2d 286 (1965); *Jones v. Siegfried Constr. Co.*, 105 F.R.D. 491, 492 (W.D.N.Y. 1984), defendant's error can be excused in view of the circumstances of this case. *See Poe v. Cristina Copper Mines*, 15 F.R.D. 85, 87 (D.Del.1953) (rule 6(b) motions for extensions of time should be granted or denied upon consideration of all the circumstances). This court can easily understand how defendant inadvertently overlooked the subtle effect of plaintiffs' cross-motion for partial summary judgment which required defendant to file its opposing affidavits. Moreover, the court is especially sensitive to defendant's oversight where it was compounded in part by the prior conversations defendant had with plaintiffs. Therefore, although defendant's motion for enlargement of time could have been filed at an earlier date, this court finds that an excusal of defendant's delay would secure a just determination in this case. *See Johnson Chem. Condado Center*, 453 F.2d 1044, 1047 (1st Cir.1972) (Rule 6(b) should be construed liberally in light of Rule 1); *Anderson v. Stanco Sports Library, Inc.*, 52 F.R.D. 108, 110 (D.S.C.1971) (Rule 6(b) should be construed liberally in light of Rule 1). *See generally* RUSCC 1 ("These rules [of civil procedure] shall be construed to secure the just, speedy, and inexpensive determination of every action.")

## CONCLUSION

Having reviewed the reasons behind the untimely filing of defendant's affidavits, this court finds that the delay resulted from excusable neglect. Accordingly, defendant's motion to supplement its response out of time under RUSCC 6(b) shall be granted.

IT IS SO ORDERED.

No costs.